UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

\-------------------------------------------------------- X

ANTOINETTE CAVALOTTI,                  :
                                       :
                     Plaintiff,        :
                                       :           **REPORT AND RECOMMENDATION**
         -against-                     :
                                       :               15 Civ. 6469 (PKC) (VMS)
DADDYO'S BBQ, INC. D/B/A DADDYO'S      :
BBQ TO GO and GREG FOSDAL, Individually, :
                                       :
                     Defendants.       :

\-------------------------------------------------------- X

**Vera M. Scanlon, United States Magistrate Judge:**

Plaintiff Antoinette Cavalotti ("Plaintiff") brings this action against Defendants

DaddyO's BBQ, Inc. d/b/a DaddyO's BBQ To Go ("DaddyO's") and Greg Fosdal ("Mr.

Fosdal") (together, "Defendants") pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 et seq.; the New York Labor Law ("NYLL"), Articles 6 and 19; Title VII of the Civil

Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.; and the New York City Human

Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107. See Second Amended Complaint

¶¶ 1-3, ECF No. 37.  Plaintiff seeks to recover unpaid wages, overtime pay, statutory damages

for Defendants' failure to furnish Plaintiff with a mandatory wage notice, liquidated damages

and prejudgment interest under the FLSA and NYLL; back pay, emotional distress damages and

prejudgment interest under Title VII and the NYCHRL; and attorneys' fees and costs.  Id.

Despite proper service of the Summons and Second Amended Complaint, see ECF Nos.

41-42, Defendants failed to answer or otherwise defend against this action.  Plaintiff now moves

for a default judgment pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 55(b)(2).

See ECF No. 43.  The Honorable Pamela K. Chen referred the motion to the undersigned for a

report and recommendation.

For the following reasons, the Court respectfully recommends that the District Judge enter a default judgment in Plaintiff's favor and award damages against Defendants as set forth below.

## I.   DISCUSSION

The following facts are derived from the Second Amended Complaint ("SAC"), ECF No. 37, and are accepted as true for the purposes of this report and recommendation.  The factual information relating to the procedural history is taken from the Court's docket.

### A.   Factual Background

Plaintiff is a resident of Richmond County, which is in New York State.  SAC ¶ 10. Defendant DaddyO's is a domestic business corporation, with its principal place of business located at 2461 Hylan Boulevard in Staten Island, New York.  Id. ¶ 11.  At all relevant times, DaddyO's employed fifteen or more employees for each business day throughout twenty or more calendar weeks.  Id.  At all relevant times, Defendant Greg Fosdal ("Mr. Fosdal") was the owner and Chief Executive Officer ("CEO") of DaddyO's.  Id. ¶ 15.  Mr. Fosdal and DaddyO's "each grossed in excess of $500,000 in the past fiscal year at all times relevant to the Second Amended Complaint," and Defendants routinely engaged in business activities which facilitated or related to interstate commerce, including arranging for the delivery of avocados imported from out-of-state.  Id. ¶ 12.

DaddyO's hired Plaintiff as a "Manager" on June 7, 2015.  Id. ¶ 19.  Mr. Fosdal was Plaintiff's supervisor and/or exercised supervisory authority over Plaintiff.  Id. ¶ 17.  Mr. Fosdal had the authority to hire, terminate and otherwise establish and/or affect the terms and conditions of Plaintiff's employment, including Plaintiff's schedule and rate of pay.  Id. ¶¶ 16-17.

### B.     Pay-Related Allegations

Upon hiring Plaintiff, Defendants did not provide Plaintiff with written notice regarding her method or rate of payment, as required under Section 195(1)(a) of the NYLL.  Id. ¶¶ 20, 77-80.  Mr. Fosdal promised Plaintiff that he would "match" Plaintiff's previous hourly rate of $11.00 per hour or pay her more, but he refused to pay Plaintiff her earned wages of $11.00 per hour for the first forty hours per week worked by Plaintiff ("regular" or "straight-time" hours) or her overtime premium of one and one-half times her regular rate (i.e., $16.50) for all hours worked over forty.  Id. ¶¶ 20-21.  Despite being hired as a "Manager," Defendants did not pay Plaintiff fixed regular payments.  Id. ¶ 14.

Plaintiff alleges that she worked for DaddyO's from approximately June 7, 2015 until July 28, 2015.  Id. ¶¶ 19, 22-28.  Plaintiff claims that Defendants willfully failed to pay Plaintiff her lawfully earned wages and overtime compensation, as required under the FLSA and NYLL, throughout the entirety of her employment.  Id. ¶¶ 21-29, 57-76.

Plaintiff claims that for the two-week period from June 7, 2015 until June 20, 2015, she worked seventy-six (76) hours per week and was paid $700 per week, which results in a rate of approximately $9.20 per hour.  Id. ¶ 22.  For this two week period, Plaintiff claims she is owed $144 for eighty (80) regular hours (($11.00 – $9.20) x 80) and $525.60 for seventy-two (72) hours of overtime (($16.50 – $9.20) x 72).[1]  Id.

---

[1] It may have been possible for Plaintiff to request damages based on an alternate calculation under New York's Hospitality Industry Wage Order, N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 12, § 146 et seq., which provides that if an employer fails to pay a hospitality industry worker, such as Plaintiff, at an hourly rate of pay, the employee's regular rate of pay for purposes of calculating overtime pay may be calculated by dividing the employee's weekly earnings by the lesser of forty hours or the hours actually worked.  See N.Y.C.R.R. §§ 146-1.4, 2.5, 3.5.

From June 21, 2015 until June 27, 2015, Plaintiff claims that she worked seventy-six (76) hours and was paid only $600.00, which results in a rate of approximately $7.90 per hour.  Id. ¶ 23. For this period, Plaintiff claims she is owed $124.00 for forty (40) regular hours (($11.00 – $7.90) x 40) and $309.60 for thirty-six (36) overtime hours (($16.50 – $7.90) x 36).  Id.

From June 28, 2015 until July 4, 2015, Plaintiff worked seventy-one (71) hours and was only paid $600.00, which results in a rate of approximately $8.45 per hour.  Id. ¶ 24.  For this period, Plaintiff claims she is owed $102.00 for forty (40) regular hours (($11.00 – $8.45) x 40) and $249.55 for thirty-one (31) overtime hours (($16.50 – $8.45) x 31).  Id.

From July 5, 2015 until July 11, 2015, Plaintiff worked sixty-five (65) hours and was only paid $500.00, which results in a rate of approximately $7.70 per hour.  Id. ¶ 25.  For this period, Plaintiff claims she is owed $132.00 for forty (40) regular hours (($11.00 – $7.70) x 40) and $220.00 for twenty-five (25) overtime hours (($16.50 – $7.70) x 25).  Id.

From July 12, 2015 until July 18, 2015, Plaintiff worked sixty-eight and a half (68.5) hours and was only paid $500.00, which results in a rate of approximately $7.30 per hour.  Id. ¶ 26.  For this period, Plaintiff claims she is owed $148.00 for forty (40) regular hours (($11.00 – $7.30) x 40) and $262.20 for twenty-eight and a half (28.5) overtime hours (($16.50 – $7.30) x 28.5).  Id.

From July 19, 2015 until July 25, 2015, Plaintiff worked sixty-eight (68) hours and was only paid $500.00, which results in a rate of approximately $7.35 per hour.  Id. ¶ 27.  For this period, Plaintiff claims she is owed $146.00 for forty (40) regular hours (($11.00 – $7.35) x 40) and $256.20 for twenty-eight (28) overtime hours (($16.50 – $7.35) x 28).  Id.

From July 26, 2015 until July 28, 2015, Plaintiff worked twenty-five (25) hours for which she was not paid and thus claims to be owed $275.00 ($11.00 x 25 hours).  Id. ¶ 28.

C.      **Allegations Related To Harassment And Retaliation**

Approximately one week after Plaintiff commenced her employment at DaddyO's, her

co-worker, Herman Gonzalez ("Mr. Gonzalez"), who held the position of "cook," began

subjecting Plaintiff to unwelcome sexual advances.  Id. ¶ 33.  For instance, Mr. Gonzalez told

Plaintiff that she was "pretty" and asked her if she had a boyfriend.  Id. ¶ 34.  On one occasion,

Mr. Gonzalez approached Plaintiff from behind and began to massage her shoulder, to which

Plaintiff immediately verbally objected.  Id.  Sometime in June 2015, Mr. Gonzalez attempted to

follow Plaintiff home.  Id. ¶ 35.  Plaintiff alleges that, fearing for her safety, she complained to

Mr. Fosdal, informing him of Mr. Gonzalez's attempt to follow her home and of another incident

in which Mr. Gonzalez followed Plaintiff's female co-worker home.  Id. ¶ 36.  Mr. Fosdal told

Plaintiff that he was "going to take care of it."  Id.

Despite her complaint to Mr. Fosdal, Mr. Gonzalez continued to make sexual remarks to

Plaintiff on a regular basis, including: "I want to eat you out," "nice ass," "you would like it in

the ass," "come home with me and take a shower," "grab my dildo," and "I have big balls if you

want to feel them."  Id. ¶¶ 37-38.  Mr. Gonzalez also made sexual gestures toward Plaintiff, such

as licking his lips when looking at Plaintiff and making hand motions simulating masturbation.

Id. ¶ 39.

Plaintiff alleges that she was extremely offended and humiliated by Mr. Gonzalez's

conduct.  Id. ¶ 40; see Affidavit of Antoinette Cavalotti ("Cavalotti Aff.") ¶ 22, ECF No. 43-17.

In or around the end of June or beginning of July 2015, Plaintiff complained about Mr.

Gonzalez's sexual harassment to Mr. Fosdal.  Id. ¶ 41.  Mr. Fosdal dismissed Plaintiff's

complaint, expressing disbelief regarding Plaintiff's allegations of sexual harassment.  Id.  Mr.

Gonzalez continued to make unwanted and unwelcomed sexual advances toward Plaintiff,

including referring to Plaintiff as "Bizcocho," which Plaintiff states, upon information and belief, denotes "vagina" in colloquial Spanish.  Id. ¶ 43.  On or about July 25, 2015, Mr. Gonzalez spread his legs towards Plaintiff and told her to "come get it," referring to his penis.  Id. ¶ 44. The next day, on or about July 26, 2015, Mr. Gonzalez commanded Plaintiff to "[g]rab [his] dildo," again referring to his penis.  Id. ¶ 45 (second alteration in original).

On or about July 27, 2015, Plaintiff "sent Defendants an e-mail, complaining of sexual harassment, stating, 'I am writing to you because of [Mr. Gonzalez] he is sexually harassing me he is making oral comments to me, calling me names . . . he also tried to follow me home one day and I told [Mr. Fosdal] . . . he is making it very uncomfortable for me.'" [2]  Id. ¶ 46.

The following day, July 28, 2015, Mr. Fosdal terminated Plaintiff's employment.  Id. ¶ 47.  Mr. Fosdal originally told Plaintiff that he was terminating her employment because she refused to transport inventory and food from DaddyO's to another of Mr. Fosdal's restaurants. Id. ¶ 48.  When Plaintiff replied that she regularly traveled between the two restaurants, Mr. Fosdal told Plaintiff that the actual reason for her termination was her complaint of sexual harassment, stating to Plaintiff: "Sorry but I need him," referring to Mr. Gonzalez.  Id. ¶ 49. Plaintiff pleaded with Mr. Fosdal to conduct an investigation or to transfer Mr. Gonzalez to another restaurant, but Mr. Fosdal repeated that he needed Mr. Gonzalez at DaddyO's.  Id. ¶ 50.

Plaintiff alleges that she filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a Notice of Right to Sue from the EEOC "with respect to the herein charges of discrimination and retaliation." [3]  Id. ¶¶ 7-8.

---

[2] Plaintiff does not specify to whom she sent the email beyond the allegation that it was sent to "Defendants."

[3] A copy of the Notice of Right to Sue from the EEOC was annexed to the Amended Complaint. See ECF No. 15.  The original charge was not provided.

### D.     Procedural History

Plaintiff filed this action against Defendants, see Complaint, ECF No. 1, and returned an executed summons for each Defendant, ECF Nos. 5-6.  Defendants did not appear or otherwise defend, and Plaintiff requested a certificate of default, ECF No. 9, which the Clerk of Court entered, ECF No. 10.  Plaintiff subsequently filed the Amended Complaint, ECF No. 15, and again returned executed summonses for each Defendant, ECF Nos. 16-17.  Defendants again did not appear or otherwise defend, and Plaintiff requested a second certificate of default against Defendants.  ECF No. 26.  After the Clerk of Court entered the second certificate of default against Defendants, ECF No. 27, Plaintiff filed a motion for default judgment, ECF Nos. 28-30, and proof of service of the motion on Defendants, ECF No. 31.

The Court scheduled a conference to address several issues concerning Plaintiff's first motion for a default judgment.  See 7/12/2017 ECF Order.[4]  Thereafter, Plaintiff withdrew the motion, filed the SAC, ECF No. 37, and again returned executed summonses for each Defendant,

---

[4] The following issues were identified in the Order:

> (1) [T]he omission from Plaintiff's amended complaint of the pleading requirement under Title VII as to the number of employees Defendant employed, see 42 U.S.C. § 2000e(b); (2) Plaintiff's allegation in the amended complaint that she was hired as a "Manager," and the legal and/or factual reasons that this allegation does not trigger the executive exemption to the FLSA, see 29 U.S.C. § 213(a)(1), and the corresponding exemption under the NYLL, see N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2; (3) the lack of particularized facts in the amended complaint regarding the interstate commerce and/or minimum revenue elements of the enterprise requirement of the FLSA; (4) whether Plaintiff is entitled to a damages award of $11 per hour in unpaid wages under the FLSA and NYLL (rather than a minimum wage-based award), or whether the request for $11 per hour is a breach of contract claim under New York common law, which was not pleaded in the complaint; and (5) whether, if the liability of the Defendants under the Title VII retaliation claim is established pursuant to the current pleading, an inquest on emotional distress damages is necessary.

7/12/2017 ECF Order.

ECF Nos. 39-40.  Defendants again did not appear or otherwise defend, and Plaintiff requested a third certificate of default against Defendants.  ECF No. 41.  After the Clerk of Court entered a certificate of default against Defendants, ECF No. 42, Plaintiff filed the instant motion for default judgment, ECF No. 43.  Thereafter, the Court issued an Order informing Defendants of the action and the nature of the claims, cautioning Defendants that if Plaintiff adequately had pleaded her claims, the Court may enter a judgment in her favor for which the corporate entity and the individual defendant would both be liable; and informing Defendants that they each may oppose the motion by appearing in Court and submitting a written opposition.  See 3/8/2018 ECF Order.  Copies of the Order were mailed to DaddyO's and Mr. Fosdal, as well as to the address of another restaurant owned by Mr. Fosdal, DaddyO's BBQ Sports Bar.  See id.  As of this writing, Defendants have not appeared or responded.

District Judge Chen referred the motion for default judgment to the undersigned.

### E.     Affidavits And Other Documentary Evidence Submitted In Support Of Plaintiff's Request For Damages

Plaintiff submitted a declaration from her attorney, Joshua P. Frank.  Declaration of Joshua P. Frank ("Frank Decl."), ECF No. 43-3.  As an exhibit to his declaration, Mr. Frank submitted an affidavit from Plaintiff attesting to the time period that Plaintiff worked for Defendants, the nature of that work, the hours she worked, the compensation she received, and the sexual harassment and retaliation to which she was subjected.  See Cavalotti Aff., ECF No. 43-17.  In support of Plaintiff's request for attorneys' fees, Mr. Frank has submitted a timesheet itemizing the hours that counsel has spent litigating this case, which includes a calculation of the total figure sought for attorneys' fees.  ECF No. 43-14.  Mr. Frank has also submitted an itemization of the costs spent litigating this case, which includes a calculation of the total figure sought for costs.  ECF No. 43-15.

## II.   ANALYSIS

### A.   Legal Standard

Fed. R. Civ. P. 55 establishes a two-step procedure by which a party may obtain a default judgment.  See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC, 779 F.3d 182, 186 (2d Cir. 2015) (citing Fed. R. Civ. P. 55); Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993) (same)).  First, if a party has failed to plead or otherwise defend against an action, the Clerk of the Court must enter a certificate of default by making a notation on the record.  See Fed. R. Civ. P. 55(a).  Second, after this entry of default, if the party still fails to appear or move to set aside the default, the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The trial court has "sound discretion" to grant or deny a motion for a default judgment. Enron Oil, 10 F.3d at 95.  In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," defaults are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id. at 95-96 (recognizing "the responsibility of the trial court to maintain a balance between clearing its calendar and affording litigants a reasonable chance to be heard").

A party's default constitutes a concession of all well-pleaded allegations of liability, except for those allegations relating to damages.  See Cement & Concrete Workers Dist. Council Welfare Fund v. Metrofoundation Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).  Once a defendant is found to be in default, a plaintiff must prove that the compensation he or she seeks relates "to the damages that naturally flow from the injuries pleaded."  Greyhound Exhibitgroup, 973 F.2d at 159.  The court must conduct an inquiry sufficient to make this determination and

9

ascertain the amount of damages, if any, to a "reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999); see Cement & Concrete Workers, 699 F.3d at 232.  The inquiry may be accomplished by evaluating the detailed affidavits and documentary evidence submitted by the plaintiff or conducting an evidentiary hearing to evaluate the amount of damages to be awarded against a defaulting defendant.  See Fed. R. Civ. P. 55(b)(2); see also Finkel v. Romanowicz, 577 F.3d 79, 87 (2d Cir. 2009) ("Rule 55(b) commits this decision to the sound discretion of the district court."); Cement & Concrete Workers, 699 F.3d at 234 (same).

**B.  Entry Of A Default Judgment Is Warranted**

**1.  Service Of Process Was Proper**

A court may not properly enter a default judgment unless it has jurisdiction over the parties against whom or which the judgment is sought.  See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 133 (2d Cir. 2011); Sajimi v. City of N.Y., No. 07 Civ. 3252 (ENV) (MDG), 2011 WL 135004, at *8 (E.D.N.Y. Jan. 13, 2011).  Fed. R. Civ. P. 4(e)(1) provides that service may be effected in accordance with the service rules of the state where the district is located or service is made.

As to Defendant DaddyO's, New York Business Corporation Law § 306(b)(1) permits service based on delivery of the summons and complaint to the New York Secretary of State as an agent of the corporation.  N.Y. Bus. Corp. Law § 306(b)(1).  Here, Plaintiff served DaddyO's with notice of this action by delivering the summons and original Complaint to the Office of the New York Secretary of State, and leaving the aforementioned documents with Nancy Dougerty, a Legal Clerk for the New York Secretary of State who was authorized to accept such service for DaddyO's.  See ECF No. 6.  Plaintiff later served DaddyO's with the Amended Complaint, by

10

delivering the Amended Complaint to the Office of the New York Secretary of State, and leaving it with Sue Zouky, a Legal Clerk for the New York Secretary of State who was authorized to accept such service for DaddyO's.  See ECF No. 17.  Plaintiff then served the Second Amended Complaint–the operative pleading–upon DaddyO's by delivering it to the Office of the New York Secretary of State, and leaving it with Ms. Zouky.  See ECF No. 39.  Plaintiff properly served DaddyO's pursuant to New York Business Corporation Law § 306(b)(1).

As to individual Defendant Mr. Fosdal, New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") § 308(1) allows for personal service on a defendant within the State of New York and § 308(2) allows for service upon a person of suitable age and discretion at the actual place of business of the person to be served, and by mailing the summons to the person to be served at his or her actual place of business.  Here, Plaintiff served Mr. Fosdal with notice of this action by delivering the summons and original Complaint to Mr. Fosdal's place of business, 2461 Hylan Boulevard, Staten Island, New York 10306, and leaving the aforementioned documents with a person of suitable age and discretion who identified herself as a co-worker of Mr. Fosdal.  See ECF No. 5.  Approximately four days later, Plaintiff's process server mailed a copy of the summons and original Complaint to Mr. Fosdal at the same address.  Id.  Plaintiff later served Mr. Fosdal with the Amended Complaint through a similar process.  See ECF No. 16.  The original Complaint and Amended Complaint were properly served on Mr. Fosdal pursuant to N.Y.C.P.L.R. § 308(2).  Plaintiff had the Second Amended Complaint served upon Mr. Fosdal personally within the State of New York.  See ECF No. 40.  Accordingly, Plaintiff properly served the Second Amended Complaint on Mr. Fosdal pursuant to N.Y.C.P.L.R. § 308(1).

Service was proper as to both Defendants.

## 2.     The Factors Relevant To A Default Judgment Are Satisfied

When determining whether to grant a default judgment, the Court is guided by the same factors that apply to a motion to set aside an entry of a default.  See Pecarsky v. Galaxiworld.com, Ltd., 249 F.3d 167, 170-71 (2d Cir. 2001); Enron Oil, 10 F.3d at 96.  These factors include: (1) whether the default was willful; (2) whether ignoring the default would prejudice the opposing party; and (3) whether the defaulting party has presented a meritorious defense.  See Swarna v. Al-awadi, 622 F.3d 123, 142 (2d Cir. 2010); Enron Oil, 10 F.3d at 96.

As to the first factor, Defendants' nonappearance and failure to respond sufficiently demonstrates willfulness.  See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998) (holding the defendant's non-appearance and failure to respond equated to willful conduct).  Here, Defendants neither answered nor responded in any way despite proper service of the Complaint, see ECF Nos. 5-7, Amended Complaint, see ECF Nos. 16-17, and Second Amended Complaint, see ECF Nos. 39-40.  Further, Defendants did not respond to Plaintiff's motion for default judgment or otherwise appear in this action despite receiving notice of the motion.  See 3/8/2018 ECF Order.  Defendants' failure to respond to the complaints or the instant motion sufficiently demonstrates willfulness.  See United States v. Ireland, No. 15 Civ. 3397 (JS) (AYS), 2016 WL 5376248, at *4 (Aug. 8, 2016), R & R adopted, 2016 WL 5372801 (E.D.N.Y. Sept. 26, 2016); Traffic Sports USA v. Modelos Restaurante, Inc., No. 11 Civ. 1454 (ADS) (AKT), 2012 WL 3637585, at *2 (Aug. 1, 2012) (finding the defendant's failure to respond "in any way" to the complaint, combined with the affidavits demonstrating proper service, confirmed beyond "any doubt" that the defendant's failure to respond was willful), R & R adopted, 2012 WL 3626824 (E.D.N.Y. Aug. 22, 2012).

Second, denying this motion would be prejudicial to Plaintiff insofar "as there are no additional steps available to secure relief in this Court." United States v. Mance, No. 17 Civ. 2902 (NGG) (SJB), 2017 WL 4857566, at *3 (E.D.N.Y. Oct. 24, 2017) (internal quotation marks omitted). "Without the entry of a default judgment, Plaintiff would be unable to recover for the claims adequately set forth in the [c]omplaint." Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 148 (E.D.N.Y. Sept. 9, 2013).

Third, Defendants cannot establish a meritorious defense since, by failing to appear in this action, they are unable to present any evidence regarding a defense. See id. at 143 ("Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment."). Defendants' failure to answer or otherwise respond to the Second Amended Complaint constitutes an admission of the factual allegations therein. See Greathouse v. JHS Sec. Inc., 784 F.3d 105, 107 (2d Cir. 2015); Chen v. Jenna Lane, Inc., 30 F. Supp. 2d 622, 623 (S.D.N.Y. 1998) ("Where . . . the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." (internal quotation marks omitted)).

As all three factors are satisfied, a default judgment would be proper in the present circumstances if the Second Amended Complaint is adequately pleaded. The Court now proceeds to consider whether those facts alleged therein establish Defendants' liability under federal, state and city law.

### C.      Defendants' Liability Under The FLSA And The NYLL

#### 1.      The FLSA Applies

To establish a claim under the FLSA, a plaintiff must demonstrate that (1) he or she is an "employee" of the defendant within the meaning of the FLSA; and (2) the defendant is an

"enterprise engaged in commerce" during the relevant period.  See 29 U.S.C. §§ 206(a), 207(a);

Chen v. Major League Baseball, 6 F. Supp. 3d 449, 453-54 (S.D.N.Y. 2014).

### i.        FLSA Coverage For Plaintiff

The FLSA broadly defines an "employee" as "any individual employed by an employer."

29 U.S.C. § 203(e)(1).  Plaintiff's Second Amended Complaint alleges that Defendants

employed Plaintiff within this statutory meaning, and that Plaintiff performed work for and

received compensation from Defendants.  See SAC ¶¶ 13-16; 22-28.  For purposes of this

default, Plaintiff has sufficiently shown that she was an "employee" within the FLSA's definition

of that term.  See Garcia v. Badyna, No. 13 Civ. 4021 (RRM) (CLP), 2014 WL 4728287, at *5

(E.D.N.Y. Sept. 23, 2014) (noting that, as the plaintiff alleged in the complaint that he was an

employee, "[i]t follows . . . that for purposes of this default, [the plaintiff] qualifies as an

'employee' under the FLSA"); Velu v. Velocity Exp., Inc., 666 F. Supp. 2d 300, 307 (E.D.N.Y.

2009) (stating that the "ultimate question is . . . 'whether, as a matter of economic reality, the

worker[] depend[s] upon someone else's business for the opportunity to render service or [is] in

business for [himself]'" (quoting Godoy v. Rest. Opportunity Ctr. of N.Y., Inc., 615 F. Supp. 2d

186, 192-93 (S.D.N.Y. 2009))).

Upon review of the Second Amended Complaint, the Court finds that although Plaintiff

was hired as a "manager," see SAC ¶¶ 14, 19, Plaintiff did not fall into any of the exemptions

from FLSA's coverage.  See 29 U.S.C. § 213 (setting forth the exemptions).  As an initial matter,

"the burden of demonstrating that an employee falls within an exempted category rests squarely

with the employer."  Saucedo v. On the Spot Audio Corp., No. 16 Civ. 451 (CBA) (CLP), 2016

WL 8376837, at *5 n.6 (Dec. 21, 2016) (noting that the exemptions are affirmative defenses

which an employer must prove), R & R adopted, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017);

see Chen, 6 F. Supp. 3d at 454; Harper v. Gov't Emps. Ins. Co., 754 F. Supp. 2d 461, 463

(E.D.N.Y. 2010) ("The burden of proving that an exemption applies is on the employer."). As Defendants have failed to appear in this action, the affirmative defense of exemption has not been raised.

In any event, the Court is satisfied that none of the exemptions applies here. Among the employees exempt from the FLSA's coverage are those "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The FLSA does not define "bona fide executive, administrative, or professional" employment; instead, it directs the Secretary of the New York State Department of Labor to define those terms "from time to time by regulations." See 29 U.S.C. § 213(a)(1), and the Department of Labor's implementing regulations, 29 C.F.R. §§ 541.100 (executive employees), 541.200 (administrative employees), 541.300 (professional employees). "Whether an employee falls within an exemption under the FLSA 'is a mixed question of law and fact.'" Charlot v. Ecolab, Inc., 136 F. Supp. 3d 433, 448 (E.D.N.Y. 2015) (quoting Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010)); Harper, 754 F. Supp. 2d at 463 ("The question of how an employee spends his time is factual, while the issue of whether such activities render the employee exempt from the FLSA's overtime provision is a question of law."). Because the FLSA is a remedial statute, its exemptions are construed narrowly against the employer. See Charlot, 136 F. Supp. 3d at 448.

To qualify for the bona fide executive, administrative, or professional capacity exemptions, an employee must be compensated on a salary basis at a rate not less than $455 per week. See 29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1); see also 29 C.F.R. § 541.2 ("The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part." (emphasis added)). "An employee is considered to be paid on a 'salary basis' if the

15

employee 'regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount' that is not subject to deductions based on the quality or quantity of the work performed." Krumholz v. Vill. of Northport, 873 F. Supp. 2d 481, 487 (E.D.N.Y. 2012) (quoting 29 C.F.R. § 541.602(a)). Plaintiff's allegations in her Second Amended Complaint that Defendants promised to compensate her at an hourly rate of $11.00 per hour, and that she was, in fact, paid varying amounts between $500 and $700 each week, SAC ¶¶ 20-28, are sufficient to demonstrate Plaintiff's non-exempt status under the FLSA. Although Plaintiff's compensation was greater than $455 per week, see SAC ¶¶ 20-28, the record does not demonstrate that Plaintiff was entitled to a predetermined "salary." Rather, Plaintiff alleges that Defendants promised to pay her an hourly wage, and that she received weekly payments ranging between $500 and $700, see id.; thus, Plaintiff was not paid on a salary basis. See Solis v. SCA Rest. Corp., 938 F. Supp. 2d 380, 396 (E.D.N.Y. 2013) ("Subject to certain exceptions, the employee must receive 'the full salary for any week in which the employee performs any work without regard to the number of days or hours worked.'" (quoting 29 C.F.R. § 541.602(a))); cf. Karropoulos v. Soup du Jour, Ltd., 128 F. Supp. 3d 518, 528 (E.D.N.Y. Aug. 31, 2015) (finding that the plaintiff was paid on a salary basis, in part, because he entered into an oral agreement when hired to be compensated at $1,300 a week). In turn, none of the three above-mentioned exemptions applies to Plaintiff.[5]

### ii.      Defendant DaddyO's Is Covered By The FLSA

Plaintiff has also demonstrated that DaddyO's BBQ is an "enterprise engaged in commerce." Under the FLSA, an "enterprise" is delineated having: (1) "employees engaged in commerce . . . [or] handling, selling, or otherwise working on goods or materials that have been

---

[5] As Plaintiff was employed by Defendants as a "manager," see SAC ¶¶ 14, 19, Plaintiff potentially meets the duty requirements of the bona fide executive and administrative employee exemptions. See 29 C.F.R. §§ 541.100(a) (executive employees), 541.200(a) (administrative employees). As Plaintiff was not compensated on a salary basis, this issue is not reached.

moved in or produced for commerce by any person"; and (2) an "annual gross volume of sales made or business done [of] not less than $500,000."  29 U.S.C. § 203(s)(1)(A)(i)-(ii).  Here, Plaintiff's Second Amended Complaint alleges that DaddyO's and Mr. Fosdal each grossed in excess of $500,000 during the relevant fiscal year, see SAC ¶ 12, and that "during Plaintiff's employment with Defendants, the Defendants routinely engaged in business activities which facilitated or related to interstate commerce, including arranging for the delivery of avocados imported from out-of-state."  Id.  Plaintiff's allegations are sufficient for the purposes of establishing FLSA enterprise coverage, albeit barely so, as it is reasonable to infer that, in addition to avocados, the myriad of goods necessary to operate a barbecue restaurant with over $500,000 in annual sales, id., do not originate exclusively in New York State.[6]  See, e.g., Vargas v. Jet Peru-Courier Corp., No. 15 Civ. 6859 (RRM) (PK), 2018 WL 1545699, at *5 (Mar. 14, 2018) (collecting cases in which courts have inferred that enterprise coverage exists based on the nature of the business conducted by the defendant employer), R & R adopted, 2018 WL 1545679 (E.D.N.Y. Mar. 28, 2018); Drice v. My Merchant Servs., LLC, No. 2015 Civ. 0395 (MKB) (MDG), 2016 WL 1266866, at *4 (Mar. 4, 2016), R & R adopted, 2016 WL 1266948 (E.D.N.Y. Mar. 31, 2018) (recommending and later adopting a finding that defendant was an enterprise engaged in commerce where plaintiff failed to describe the type of business in which defendant was engaged, but the court's independent research as to the nature of the business on defendant's website made inference possible); Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) (finding that it was "reasonable to infer that [the defendant restaurant]

_____

[6] Despite being on notice of the Court's concerns regarding the adequacy of the Amended Complaint's allegations as to this issue (see footnote 4), Plaintiff's Second Amended Complaint remains extremely thin on facts related to the interstate-commerce and minimum-revenue requirements.  The preferred practice would be to provide specific facts as to each element of each of Plaintiff's claims.

requires a wide variety of materials to operate" and "some of these materials moved or were produced in interstate commerce").

## 2.    The NYLL Applies

To establish a claim under the NYLL, Plaintiff must prove that she was an "employee" and that Defendants were "employers," as defined by the statute.  See Lauria v. Heffernan, 607 F. Supp. 2d 403, 407-08 (E.D.N.Y. 2009).  The NYLL defines an employee as "any person employed for hire by an employer in any employment," N.Y. Lab. Law § 190(2), and an employer is described as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service," id. § 190(3).  "Unlike the FLSA, the NYLL does not require that a defendant achieve a certain minimum in annual sales or business in order to be subject to the law."  Garcia, 2014 WL 4728287, at *5.

Plaintiff's burden in establishing that she is an "employee" entitled to the NYLL's protections is "substantially similar" to the burden she is required to satisfy under the FLSA. Browning v. Ceva Freight, LLC, 885 F. Supp. 2d 590, 599 (E.D.N.Y. 2012); see D'Arpa v. Runway Towing Corp., No. 12 Civ. 1120 (JG) (RER), 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) ("The New York Labor Law 'is the state analogue to the federal FLSA.'" (quoting Santillan v. Henao, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011))).  As noted by the Second Circuit, the FLSA and the NYLL analyses may differ.  See Irizarry v. Catsimatidis, 722 F.3d 99, 117 (2d Cir. 2013) ("Plaintiffs assert that the tests for 'employer' status are the same under the FLSA and the NYLL, but this question has not been answered by the New York Court of Appeals.").  For example, the New York common law test as to who is an employer for the purposes of the NYLL "focuses more on 'the degree of control exercised by the purported employer'" over the purported employee, "as opposed to the 'economic reality of the situation.'"

Hart v. Rick's Cabaret Int'l., Inc., 967 F. Supp. 2d 901, 923 (S.D.N.Y. 2013) (quoting Velu, 666 F. Supp. 2d at 307). "[T]he critical inquiry in determining whether this employment relationship exists pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." Meyer v. U.S. Tennis Ass'n, 607 F. App'x 121, 122 (2d Cir. 2015) (citing Bynog v. Cipriani Grp., Inc., 1 N.Y.3d 193, 196 (N.Y. 2003)).

The New York Court of Appeals has articulated five factors relevant to assessing worker control under the common law test. The five factors are whether the plaintiff: "(1) worked at his own convenience; (2) was free to engage in other employment; (3) received fringe benefits; (4) was on the employer's payroll; and (5) was on a fixed schedule." Bynog, 1 N.Y.3d at 196. "These factors, however, are not exhaustive," and "New York Courts commonly consider additional factors." Hart, 967 F. Supp. 2d at 923; see E. Coast Indus., Inc. v. Becconsall, 301 N.Y.S.2d 778, 779-80 (N.Y. Dist. Ct. 1969) (concluding factors important in evaluating control included the employer's authority to decide the timing and selection of each job and employer's right to discharge or fire the employee).

As for the first Bynog factor, Plaintiff did not work at her own convenience, as her schedule was set by Defendants. See SAC ¶ 16; cf. Sellers v. Royal Bank of Canada, No. 12 Civ. 1577 (KBF), 2014 WL 104682, at *6 (S.D.N.Y. Jan. 8, 2014) (finding that the plaintiff worked at his own convenience because he could arrive and leave work whenever he pleased and take breaks at his pleasure). The fifth factor also falls in Plaintiff's favor, as through the seven full weeks Plaintiff was employed at DaddyO's, Plaintiff worked exclusively between sixty-five and seventy-six hours per week. See SAC ¶¶ 22-28; cf. Malouf v. Equinox Holdings, Inc., 969 N.Y.S.2d 804, 2012 WL 7154115, at *10 (Sup. Ct. N.Y. Cty. Oct. 22, 2012) (stating that the

plaintiff, who sporadically appeared as a guest class instructor at the defendant gym, did not meet the fixed schedule <u>Bynog</u> factors).

The fourth factor arguably favors Defendants insofar as Plaintiff–although promised an hourly wage of $11.00–was not paid a set hourly wage or weekly salary.  <u>See</u> SAC ¶¶ 20-28. This "factor[], in context, merit[s] modest weight."  <u>Hart</u>, 967 F. Supp. 2d at 925 ("To assign [the fourth factor] much weight would effectively allow any employer to control, under New York law, a worker's status simply by labeling her an independent contractor . . . .").  To allow Defendants to derive a benefit for flouting federal and state wage reporting and tax laws would undermine the wage laws that were enacted to protect employees.

The second and third <u>Bynog</u> factors are neutral, as Plaintiff's Second Amended Complaint is silent as to whether Plaintiff was restricted from engaging in other employment and whether she received any fringe benefits.[7]  In any event, with regard to additional employment and fringe benefits, these factors, like the factor concerning payroll, "in context, merit modest weight."  <u>Hart</u>, 967 F. Supp. 2d at 925.

Separate from the <u>Bynog</u> factors, Defendants had the authority to, and did in fact, hire and terminate Plaintiff.   It is also noteworthy that, as of 2014, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)."  <u>Hart</u>, 967 F. Supp. 2d at 924; <u>see</u> <u>Topo v. Dhir</u>, No. 01 Civ. 10881

---

[7]  The Second Amended Complaint likely does not mention whether Defendants had discussed Plaintiff's freedom to engage in other employment because she was already working in excess of sixty-five hours per week.  <u>See</u> SAC ¶¶ 22-28.  Therefore, as a practical matter, Plaintiff may not have worked much more at another job.  Furthermore, in light of Plaintiff's allegations that Defendants paid her subpar wages, it would be reasonable to infer that Plaintiff's Second Amended Complaint does not mention fringe benefits because Defendants did not offer any.

(PKC), 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004) ("There is general support for giving

FLSA and the New York Labor Law consistent interpretations.").

Considering the five relevant factors, and in view of the overarching issue of the degree

of control exercised by Defendants, this Court respectfully recommends finding that Plaintiff

qualifies as an employee under the NYLL.

### 3. Individual Defendant Greg Fosdal Was Plaintiff's Employer Under The FLSA And The NYLL

The Court next considers Individual Defendant Greg Fosdal's status as Plaintiff's

employer under the FLSA and the NYLL.

The FLSA defines the term "employer" to include "any person acting directly or

indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  In

Carter v. Dutchess Cmty. Coll., 735 F.2d 8 (2d Cir. 1984), the Second Circuit outlined a multi-

factor test, grounded in "economic reality," for determining whether there is an employer-

employee relationship between an individual defendant and an FLSA plaintiff.[8]  See Carter, 735

F.2d at 12.  The Carter factors ask whether the alleged employer (1) had the power to hire and

fire the employees, (2) supervised and controlled employee work schedules or conditions of

employment, (3) determined the rate and method of payment, and (4) maintained employment

records.  Id.; see Irizarry, 722 F.3d at 105-06 (discussing the Carter factors in determining an

individual defendant's liability for an FLSA violation).  "No one of the four [Carter] factors

---

[8]  The Carter test has also been called the "formal control" test.  See Teri v. Spinelli, 980 F.
Supp. 2d 366, 374 (E.D.N.Y. 2013).  In the event that an individual defendant is not found to
have formal control, he or she may still be found to be a joint-employer along with a corporate
defendant under a test called the "functional control" test, set forth by the Second Circuit in
Zheng v. Liberty Apparel Co. Inc., 355 F.3d 61, 72 (2d Cir. 2003).  The Court does not reach the
Zheng test here because it finds that Plaintiff satisfies the Carter test with regard to Mr. Fosdal.

standing alone is dispositive"; instead, the "economic reality test encompasses the totality of the circumstances."  Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999).

Here, Plaintiff alleges that Mr. Fosdal (1) had the power to, and did, hire and fire Plaintiff, (2) supervised and controlled Plaintiff's work schedule and conditions of employment, and (3) determined Plaintiff's rate of payment, see SAC ¶¶ 17-18, establishing three of the Carter factors and depicting an "economic reality" in which Mr. Fosdal was Plaintiff's joint employer along with DaddyO's.  See Teri, 980 F. Supp. 2d at 376 ("[T]he Court concludes that no reasonable jury considering the 'economic realities' of the [parties'] relationship could find that [the individual defendant] was not [the p]laintiffs' joint employer under the FLSA and NYLL.").

The fourth Carter factor, regarding employment records, is unsatisfied as Plaintiff alleges that Mr. Fosdal never provided Plaintiff with employment records.  See SAC ¶ 30.  The lack of this Carter factor does not affect Plaintiff's claims as to Mr. Fosdal.  See generally Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 145 (2d Cir. 2008).  That a defendants may not have maintained employment records does not undermine the "economic reality" that the defendant controlled all tasks related to the plaintiff's employment, as failing to keep employment records is itself a violation of the FLSA and NYLL–a violation Plaintiff includes in her Second Amended Complaint.  See ¶¶ 61-63; see also Herman, 172 F.3d at 140 ("But that this fourth factor is not met is not dispositive.").

As three of the four Carter factors are satisfied, Mr. Fosdal is properly considered Plaintiff's employer and may be held individually liable for FLSA violations.  See Zheng, 355 F.3d at 71 ("[The individual defendant] jointly employed the company's employees where the [the individual defendant] exercised three of the four employer prerogatives identified in Carter." (citing Herman, 172 F.3d at 139)).

22

In light of the Court's finding that Mr. Fosdal was Plaintiff's employer for the purposes of FLSA liability, the Court finds that he was Plaintiff's employer for the purposes of NYLL liability as well. "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA." Copantitla v. Fiskardo Estiatorio, Inc., 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011); see Apple v. Atlantic Yards Dev. Co., LLC, No. 11 Civ. 5550 (JG) (JMA), 2012 WL 2309028, at *7 n.6 (E.D.N.Y. Oct. 27, 2014) (concluding that the defendants were not the plaintiffs' employers under the FLSA or the NYLL using the Carter analysis and stating that the NYLL was not addressed separately because its definitions were nearly identical to the FLSA's).

### 4.   Defendants Are Jointly And Severally Liable

As the Court has found that DaddyO's and Mr. Fosdal were jointly Plaintiff's employers, each Defendant is jointly and severally liable under the FLSA and the NYLL for any FLSA and NYLL damages award made in Plaintiff's favor. See Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685 (S.D.N.Y. 2011) (finding allegations that an individual defendant "was an owner, partner, or manager," coupled with his default, was sufficient to qualify him as an FLSA and an NYLL employer, and to impose joint and several liability with corporate defendant for wage law violations); Shim v. Millennium Grp., LLC, No. 08 Civ. 4022 (FB) (VVP), 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (on default judgment, finding both the individual defendants and the corporation to be liable under the FLSA where the complaint contained allegations of actions taken collectively by "Defendants"); Moon v. Kwon, 248 F. Supp. 2d 201, 237 (S.D.N.Y. 2002) (holding that a corporate officer who is considered an employer under the FLSA is jointly and severally liable along with the corporation); see also Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 129 (E.D.N.Y. 2011) ("Courts in this circuit have held that

the same analysis applies when determining whether defendants are jointly liable as employers

under the FLSA and the NYLL." (collecting cases)).

> **5.** **Defendants Are Liable For Failing To Pay Plaintiff Her Agreed-Upon Wages As Required By The NYLL**
>
> **i.** **Sections 190/191**

In her second cause of action, Plaintiff alleges that "Defendants failed and refused to pay

Plaintiff her earned wages, in violation of New York Labor Law § 191." SAC ¶ 62. The Court

considers the New York Labor Law because it provides greater relief than the FLSA, which

limits straight-time wage claims to minimum-wage claims.

New York's Labor Law, found in Chapter 31 of the Consolidated Laws of New York, is

organized into articles governing various aspects of employment. As relevant to this case, New

York's wage-and-hour laws are primarily found in Article 6 ("Payment of Wages"), N.Y. Lab.

Law §§ 190-199-D; Article 19 ("Minimum Wage Act"), id. §§ 650-665; and Articles 8 and 9,

which govern the payment of "prevailing wage" rates to workers under public construction work

and building service contracts.[9]

"Article 6 of the Labor Law sets forth a comprehensive set of statutory provisions

enacted to strengthen and clarify the rights of employees to the payment of wages." TrueLove v.

Northeast Capital & Advisory, Inc., 95 N.Y.2d 220, 223 (N.Y. 2000). Whereas the articles

governing minimum wage (Article 19) and prevailing wages (Articles 8 and 9) mandate specific

rates that must be paid to covered employees, Article 6 does not refer to a particular wage.

Instead, "wages" are broadly defined in Article 6 as "the earnings of an employee for labor or

---

[9] Article 8 ("Public Work"), N.Y. Lab. Law §§ 220-224, covers workers, labors and mechanics and Article 9 ("Prevailing Wage for Building Service Employees"), id. §§ 230-239-a, covers building service employees.

24

services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission or other basis."  N.Y. Lab. Law § 190(1).

Section 191 of Article 6 of the NYLL, the provision invoked by Plaintiff here, is titled "Frequency of Payments," and sets forth requirements governing an employer's wage payments to various subcategories of employees, including "Manual worker[s]," N.Y. Lab. Law § 191(1)(a); "Railroad worker[s]," id. § 191(1)(b); "Commission salespersons," id. § 191(1)(c); and "Clerical and other worker[s]," id. § 191(1)(d).  This last category is a "catch-all provision," Lauria v. Herrnan, 607 F. Supp. 2d 403, 407 (E.D.N.Y. 2009), encompassing any employee not included in the earlier subcategories, except those "employed in a bona fide executive, administrative or professional capacity whose earnings are in excess of nine hundred dollars a week."  Id. § 190(7).  Under NYLL § 191, "clerical and other workers shall be paid the wages earned in accordance with the agreed terms of employment, but not less frequently than semi-monthly, on regular pay days designated in advance by the employer."  Id. § 191(1)(d).[10]

Article 6 of the NYLL also includes Section 198, entitled "Costs, remedies," which provides in subsection 1-a:

> In any action instituted in the courts upon a wage claim by an employee . . . in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the [CPLR], and, unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of wages found to be due . . . .

---

[10] "Wages" for purposes of Section 191 does not include "benefits or wage supplements."  See N.Y. Lab. Law § 190(1) ("The term 'wages' also includes benefits or wage supplements . . . except for the purposes of sections [191] and [192] of this article.").

N.Y. Lab. Law § 198(1-a); see id. § 198(3) ("All employees shall have the right to recover full

wages, benefits and wage supplements and liquidated damages accrued during the six years

previous to the commencing of such action . . . .").[11]

Where a non-exempt employee has an agreement with his or her employer to be paid at a

rate greater than the minimum wage, several courts have found that the failure to pay the

promised rate is a violation of NYLL § 191, entitling the employee to damages under NYLL

§ 198.  See, e.g., Calle v. Yoneles Enters., Inc., No. 16 Civ. 1008 (NGG) (RLM), 2017 WL

6942652, at *7 (Oct. 24, 2017) ("Section 191 of the NYLL mandates that workers 'be paid . . . in

accordance with the agreed terms of employment . . . .'" (quoting N.Y. Lab. Law § 191(1)(a)(i),

191(1)(d))), R & R adopted, 2018 WL 401269 (E.D.N.Y. Jan, 12, 2018); Garcia v. Giorgio's

Brick Oven & Wine B., No. 11 Civ. 4689 (LLS) (FM), 2012 WL 3339220, at *4 (Aug. 15, 2012)

("Here, the agreed terms of employment provided that [plaintiff] would be paid $300 per week.

[Plaintiff] thus is entitled to $300 for the week that his wages were withheld [under NYLL §

191]."), R & R adopted, 2012 WL 3893537 (S.D.N.Y. Sept. 7, 2012); Michalek v. Amplify

Sports & Entm't LLC, No. 11 Civ. 508 (PGG), 2012 WL 2357414, at *3-4 (S.D.N.Y. June 20,

2012) (rejecting defendants' argument that a claim under NYLL § 191 does not state an

independent cause of action aside from breach of contract, and finding that plaintiff had stated a

claim that his employers violated NYLL § 191 because plaintiff "sufficiently pled that he has a

contract right to the payments he seeks"); Wing Kwong Ho v. Target Constr. of N.Y., Corp., No.

08 Civ. 4750 (KAM) (RER), 2011 WL 1131510, at *14 (E.D.N.Y. Mar. 28, 2011) ("[Defendant]

failed to pay [plaintiff] his earned wages weekly or semi-monthly [as required by NYLL § 191]

---

[11] In addition to the remedies set forth in Section 198, Article 6 includes a "Criminal penalties" provision.  See N.Y. Lab. Law § 198-a.

. . . [and plaintiff] can therefore recover for all unpaid wages at the promised rate of pay . . . .");

Shin Won Kang v. Inno Asset Dev., LLC, No. 08 Civ. 4848 (SLT) (JMA), 2011 WL 1674554, at

*3 (Jan. 28, 2011) ("Unlike the FLSA, NYLL entitles a successful plaintiff to collect the full

amount of wages contractually owed, not just the statutory minimum wage for the hours

worked." (citing NYLL § 191)), R & R adopted, 2011 WL 1670946 (E.D.N.Y. May 3, 2011);

Chun Jie Yin v. Kim, No. 07 Civ. 1236 (DLI) (JO), 2008 WL 906736, at *4-6 (E.D.N.Y. Apr. 1,

2008) (explaining that a "difference between the [FLSA and NYLL] is that with respect to

damages, a plaintiff who prevails on a cause of action under the state law [for a violation of

Section 191 of the NYLL] is entitled to the full amount of wages owed, not just the statutory

minimum wage for the hours worked," and awarding plaintiff unpaid regular wages "[a]t the

agreed upon wage"); Epelbaum v. Nefesh Achath B'Yisrael, Inc., 237 A.D.2d 327, 328-30 (2d

Dep't 1997) (holding that plaintiff demonstrated that she "was not paid her earned wages 'in

accordance with the agreed terms of employment'" pursuant to NYLL § 191(1)(d), and awarding

plaintiff those unpaid wages).  These courts largely focus on the "agreed upon terms of

employment" portion of the statute.  In a recent unpublished decision, the Second Circuit appears

to agree with this interpretation of the scope of Section 191, noting that "[w]holesale withholding

of wages is covered by NYLL § 191." Goldberg v. Jacquet, 667 F. App'x 313, 314 n.1 (2d Cir. 2016).[12]

The Court believes that the plain language of Sections 190 and 191 together, and the structure of Article 6, support the conclusion that, together, Sections 190 and 191 provide for recovery of agreed-upon wages. The foundational understanding of Article 6 is that wages, which are defined as "the earnings of an employee for labor or services rendered," N.Y. Lab. Law § 190(1), will be paid. The "catch-all provision" of Section 191(1)(d), which extends the statute to most "nonexempt" employees, explicitly covers employees who make less than $900 per week. Id. § 190(7). Given that a standard work week is forty hours per week, see 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4, the definitional section of Article 6 of the Labor Law extends its protections to employees earning up to $22.50 per hour (40 x $22.50 = $900), an amount well above the minimum wage.

---

[12] There is a contrary line of cases in which courts have found Section 191's protections to be limited to the timeliness of wage payments, based on an interpretation of a prior Second Circuit decision, Myers v. Hertz Corp., 624 F.3d 537 (2d Cir. 2010). See, e.g., Perez-White v. Advanced Dermatology of N.Y. P.C., No. 15 Civ. 4858 (PGG), 2016 WL 4681221, at *10 (S.D.N.Y. Sept. 7, 2016) (citing Myers for the proposition that Section 191 involves only the timeliness of wages). In contrast to Plaintiff here, the Myers plaintiffs, as the Second Circuit emphasized, "never alleged that overtime payments were part of the 'agreed terms' of their employment with [the defendants]." Myers, at *545 n.1 (quoting N.Y. Lab. Law § 191). Rather, the Myers plaintiffs were attempting to use Section 191 as a vehicle to recover overtime wages they were allegedly owed under the FLSA's overtime statute. Id. at 543-46 & n.1. The Second Circuit, in dicta, expressed doubt that NYLL § 191 could be used to recover FLSA overtime wages, noting that "New York courts have suggested that plaintiffs may not use Labor Law § 191 to seek unpaid wages to which they claim to be entitled under a statute." Id. at 545 n.1 (citing Jara v. Strong Steel Door, Inc., 20 Misc.3d 1135, 2008 WL 3823769, at *11-12 (Sup. Ct. N.Y. Cty. Aug. 15, 2008), which held that NYLL § 191 is an inappropriate vehicle for the recovery of Article 8 "prevailing wages"). To the extent courts have interpreted Myers as signaling that agreed-upon wages, as opposed to wages owed under another statute, are not recoverable under NYLL § 191, this Court respectfully disagrees, as the issue of agreed-upon wages was expressly not before the Second Circuit in Myers.

The definition of "Clerical and other worker," which covers Plaintiff in this case, is one of three definitions in the Labor Law that explicitly provide that Article 6 applies to non-executive (and likely lower-wage) employees.  See N.Y. Lab. Law § 190(5)-(7).  In the section immediately following the definitional section, Section 191, the statute provides for the timing of wage payments for different types of workers, each described without reference to any minimum wage cap–i.e., for "Manual worker[s]," after the end of the week in which "wages are earned"; for "Railroad worker[s]," on a specific schedule for "wages earned"; for "Commission salespersons," "wages [and other compensation] in accordance with the agreed terms of employment"; and for "Clerical and other worker[s]," for "the wages earned in accordance with the agreed terms of employment."  Id. § 191(1)(a)-(d).  Nothing in Section 191 limits the statute's protections to protecting only the timing of wage payments, but not protecting the payment of wages.  Instead, for each category of employee, the statute states that wages "shall be paid."  Id.  Given that Sections 190 and 191 cover employees who earn well over minimum wage, id. §§ 190(1), (7), and whose wage rates are set by some kind of agreement with employers; that Section 191 requires the payment of wages; and that the NYLL provides minimum wage protections in a separate article, N.Y. Lab. Law, Art. 19 §§ 650-665, Section 191 appears to provide a substantive private right of action for employees such as Plaintiff for recovering their agreed-upon wages at least up through $900/week (or otherwise, if the employee falls within another category of worker).

Plaintiff here alleges that she had an oral agreement with Defendants to pay her $11.00 per hour, and, by defaulting, Defendants have conceded that such an agreement existed.  Plaintiff has further alleged that, despite this agreement, Defendants failed to pay her at a rate of $11.00 per hour for the straight-time hours she worked.  Plaintiff has sufficiently alleged that she was

not paid her earned wages in accordance with the agreed terms of employment, as required by

NYLL § 191(1)(d), and she is therefore entitled to recover those unpaid wages under NYLL

§ 191, as well as reasonable attorneys' fees, liquidated damages and prejudgment interest under

NYLL § 198.

**i.      Section 198**

Some courts have found that NYLL § 198 not only sets forth remedies for violations of

other provisions of Article 6 (such as Section 191), but that it provides a cause of action to

recover agreed-upon wages above the minimum wage.  See, e.g., Coley v. Vanguard Urban

Improvement Ass'n, Inc., No. 12 Civ. 5565 (PKC) (RER), 2018 WL 1513628, at *9 (E.D.N.Y.

Mar. 29, 2018); Denoyer v. PMI Sec. Prot. Inc., No. 15 Civ. 4838 (KMK) (JCM), 2018 WL

1738217, at *3 (S.D.N.Y. Jan. 23, 2018); Santillan v. Henao, 822 F. Supp. 2d 284, 292

(E.D.N.Y. 2011).  These courts specifically cite the language in subsection (3) of 198, which

provides that "[a]ll employees shall have the right to recover full wages, benefits and wage

supplements and liquidated damages accrued during the six years previous to the commencing of

such action."  NYLL § 198(3).  In another recent decision, Magistrate Judge Gorenstein directly

disagreed that NYLL § 198 could be used to state a claim for agreed-upon wages.  See Contrera

v. Langer, 314 F. Supp. 3d 562, 568-570 (S.D.N.Y. 2018).  Judge Gorenstein concluded that

NYLL § 198 "is not a substantive provision but one that addresses procedural matters collateral

to liability such as limitations periods and damages.  Rather, any such liability must be found in

another section of Article 6."  Contrera, 314 F. Supp. 3d at 568.

This Court need not reach the issue of whether NYLL § 198 creates a cause of action or

is merely a remedies provision, as Plaintiff here, unlike the plaintiffs in Contrera, has asserted a

claim under NYLL § 191.  Compare SAC ¶ 62 with Contrera, 314 F. Supp. 3d at 571 n.2

30

(because plaintiffs did not cite to NYLL § 191 or make allegations consistent with that statute in their complaint, and did not rely on NYLL § 191 in their opening brief, the court "d[id] not reach the question of whether [NYLL § 191] would support any potential claims by plaintiffs").  The Court notes that Contrera, and each of the cases cited therein, rely on Gottlieb v. Kenneth D. Laub & Co., 82 N.Y.2d 457 (N.Y. 1993), a decision issued in 1993 by the New York Court of Appeals.  See Contrera, 314 F. Supp. 3d at 569 (collecting cases that have found that a claim may not be brought under NYLL § 198 itself).  In Gottlieb, the New York Court of Appeals found that an employee who asserted a common-law contract claim, but did not allege a violation of any substantive provision of Article 6 of the NYLL, could not recover attorneys' fees under NYLL § 198(a-1).  See Gottlieb, 82 N.Y.2d at 460-65.  At the time Gottlieb was decided in 1993, NYLL § 198(a-1) stated only that "the court shall allow [a prevailing] employee reasonable attorney's fees."  Id. at 462 (including in the decision the statutory language of Section 198 as it appeared at the time).  In a 1997 amendment, subsection (3) was added to NYLL § 198, which contained the language upon which the above-mentioned cases relied in finding that NYLL § 198 creates a substantive right to unpaid wages.  See Unpaid Wages Prohibition Act of 1997, ch. 605 §§ 2, 4, 1997 N.Y. Laws 3392, 3393 (1997).  Thus, there is a significant question of New York statutory interpretation as to the relevance, if any, of Gottlieb to interpretation of post-Gottlieb amendments to NYLL § 198, of which there have been several.

It should be noted that the difference between finding a cause of action under NYLL § 191 or § 198 could have potentially significant consequences, although not for Plaintiff, as employees "employed in a bona fide executive, administrative or professional capacity" are not covered by NYLL § 191, and the definition of "wages" for purposes of NYLL § 191 specifically

excludes benefits and wage supplements.  If NYLL § 198 provides substantive relief for wage

claims, the range of claimants and their recoveries could expand greatly.

      **6.**      **Defendants Are Liable For Failing To Pay Plaintiff Her Overtime Compensation As Required By The FLSA And The NYLL**

Plaintiff alleges that she was not paid overtime compensation in violation of the FLSA

and the NYLL.  See SAC ¶¶ 21, 65-67, 71-73.  Both federal and state law require that employers

pay employees "one and one-half times" their "regular rate" for all hours worked in excess of

forty hours in a given week.  See 29 U.S.C. § 207(a); 29 C.F.R. § 778.105; 12 N.Y.C.R.R. § 142-

2.2.  Courts have found that this language provides for overtime claims based on a rate of pay

over minimum wage under the FLSA.  See Walling v. Helmerich & Payne Inc., 323 U.S. 37, 42

(1942) (holding that "[e]ven when wages exceed the minimum prescribed by Congress, the

parties to the contract must respect the statutory policy of requiring the employer to pay one and

one-half times the regular hourly rate for all hours actually worked in excess of 40"); Sobczak v.

AWL Indus., Inc., 540 F. Supp. 2d 354, 357 (E.D.N.Y. 2007) ("It is firmly established that even

employees who are paid in excess of the minimum wage may proceed under the FLSA if they do

not receive time and a half for overtime." (citing Overnight Motor Transp. Co. v. Missel, 316

U.S. 572, 577 (1942)); Donovan v. Kaszycki & Sons Contractors, Inc., 599 F. Supp. 860, 869

(S.D.N.Y. 1984) ("The Second Circuit [has] made clear that while the agreed rate could be

disregarded for purposes of determining whether a [29 U.S.C. § 206(a)] minimum wage violation

had occurred, for purposes of [29 U.S.C. § 207(a)][,] overtime hours must be compensated at one

and one-half times the regular, agreed rate rather than the minimum wage rate." (citing United

States v. Klinghoffer Bros. Realty Corp, 285 F.2d 487, 491 (2d Cir. 1960)).  Here, as Plaintiff

was not paid wages at a regularly hourly rate but was promised an hourly rate higher than the

minimum wage under either the FLSA or NYLL, the Court finds that overtime wages should be

based on a rate of one and one-half times the contractually promised rate of pay.[13]  See Sun v. AAA Venture Capital, Inc., No. 15 Civ. 4325 (FB) (MDG), 2016 WL 5793198, at *7 (Sept. 12, 2016) ("Courts in this district have concluded that it is more appropriate to use the contractual rate in calculating overtime as opposed to relying on the amount actually paid to the plaintiffs, particularly in situations where an employer disregarded a contractual obligation to pay a higher rate." (internal quotation marks & alterations omitted)), R & R adopted, 2016 WL 5678561 (E.D.N.Y. Sept. 30, 2016); Blue v. Finest Guard Servs., No. 09 Civ. 133 (ARR) (CLP), 2010 WL 2927398, at *10-11 (June 24, 2010), R & R adopted, 2010 WL 2927403 (E.D.N.Y. Jul. 19, 2010) (recommending and later adopting an award of overtime pay based on contractual rate under the NYLL).

Here, Plaintiff claims that Defendants failed to pay her the overtime premium for the entirety of her employment, thereby violating both the FLSA and NYLL.  See SAC ¶ 21 (alleging a "fail[ure] to pay Plaintiff overtime for all hours she worked over forty (40) hours per week, in violation of the FLSA and the NYLL"); see also SAC ¶¶ 65-67, 72-73.  Plaintiff's allegations are supported by her detailed recollections of the number of hours she worked per week and the pay she received.  In light of the foregoing, Defendants are liable to Plaintiff for failing to pay her an overtime premium at $16.50 per hour pursuant to the FLSA and the NYLL.

D.     **Damages Under The FLSA And NYLL**

1.     **Agreed-Upon Wages Under The NYLL**

Both federal and New York State law require employers to "make, keep, and preserve" records of employee wages, hours and employment conditions.  See 29 U.S.C. § 211(c); 12

---

[13] As discussed in footnote 1, Plaintiff may have been entitled to additional damages using a more favorable regular rate of pay calculation under New York's Hospitality Wage Order.

N.Y.C.R.R. § 142-2.6; Pineda, 831 F. Supp. 2d at 674 (citing the federal and state statutes).  If an employer fails to produce these requisite records, the plaintiff may satisfy his or her burden of proving hours worked by relying solely on their recollection.  See Daniels v. 1710 Realty LLC, 497 F. App'x 137, 139 (2d Cir. 2012) (citing Kuebel v. Black & Decker Inc., 643 F.3d 352, 362 (2d Cir. 2011)); Choudry v. Durrani, No. 14 Civ. 4562 (SIL), 2016 WL 6651319, at *9 (E.D.N.Y. Nov. 10, 2016).  Where, as here, a defendant employer defaults, a plaintiff's recollection and estimates of hours worked are presumed to be correct.  See Grochowski v. Phoenix Const., 318 F.3d 80, 87 (2d Cir. 2003); Pavia v. Around the Clock Grocery, Inc., No. 03 Civ. 6465 (ERK) (CLP), 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005) (finding plaintiff's testimony to be sufficient to establish unpaid wages).  By defaulting, Defendants have not contradicted Plaintiff's specific allegations and credible affidavit, which sufficiently sets forth the days and hours Plaintiff worked for Defendants, the pay that Defendants promised to give Plaintiff as compensation for that work, and the wages that Defendants paid Plaintiff.[14]

Plaintiff worked at least forty hours per week (i.e., straight-time hours) for seven full weeks of employment with Defendants.  See SAC ¶¶ 21-27; Cavalotti Aff. ¶¶ 6-11.  At $11.00 per hour, Plaintiff should have been paid a total of $3,080 for those straight-time hours ($11.00/hour x 280 hours).  In addition, Plaintiff was not paid at all for the twenty-five hours she worked during the week she was fired, see SAC ¶ 28; Cavalotti Aff. ¶ 12, for which she is owed $275 ($11.00/hour x 25 hours).  Applying the actual rates paid to Plaintiff, which varied from week to week, Plaintiff was paid only $2,284 for those hours. See SAC ¶¶ 21-28; Cavalotti Aff.

---

[14] The Court considers the damages calculations as offered by Plaintiff, as a defendant must be on notice of the damages requested.  See Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings.").

¶¶ 6-12; see also Part I.B supra. Thus, Plaintiff is entitled to $1,071.00 in damages ($3,355 – $2,284) for unpaid agreed-upon wages for her straight-time hours under the NYLL.[15]

## 2.    Overtime Wages

The Second Circuit recently clarified in a trio of cases that the degree of specificity that a plaintiff must meet in order to make out a Section 207(a)(1) FLSA overtime claim. See Dejesus v. HF Mgmt. Servs., LLC, 726 F.3d 85, 88-89 (2d Cir. 2013); Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200-201 (2d Cir. 2013); Lundy v. Catholic Health Sys. of Long Island, Inc., 711 F.3d 106, 114 (2d Cir. 2013). A plaintiff must provide "sufficient detail about the length and frequency" of unpaid work in order to support "a reasonable inference" that he or she "worked more than forty hours in a given week." Nakahata, 723 F.3d at 201; see Lundy, 711 F.3d at 114 ("[I]n order state a plausible FLSA overtime claim, a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours."). Although it is not necessary for a plaintiff to estimate the number of hours a plaintiff worked in "some or all workweeks," "some factual context" is necessary in order to "nudge [an FLSA plaintiff's] claim 'from conceivable to plausible.'" DeJesus, 726 F.3d 85 at 88-90 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plaintiff's burden, as described by these three cases, likewise applies in the context of the NYLL overtime compensation claim. See 12 N.Y.C.R.R. § 142-2.2 (stating an employer shall pay an employee for overtime "in the manner and methods provided in and subject to the exemptions of [the FLSA]"); see Nakahata, 723 F.3d at 200 ("[T]he NYLL adopts

---

[15] Under the NYLL, in addition to receiving damages for unpaid regular wages and overtime, an employee may be entitled to receive "spread-of-hours" pay, which is an additional hour of pay at the basic minimum hourly rate for any workday that lasts longer than ten hours. See N.Y.C.R.R. § 146-1.6(a-c). The Court need not address spread-of-hours damages because Plaintiff has not sought them in her Second Amended Complaint or in the default judgment motion.

th[e] same standard . . . [as the] FLSA definition of overtime into the NYLL." (citing 12 N.Y.C.R.R. § 142-2.2)).

In contrast to <u>Lundy</u>, <u>Nakahata</u> and <u>DeJesus</u>, in which the Second Circuit dismissed FLSA-based overtime claims as speculative and insufficiently detailed, Plaintiff has provided the Court with specific information regarding the overtime hours she worked.  <u>See</u> <u>Tackie v. Keff Enters. LLC</u>, No. 14 Civ. 2074 (JPO), 2014 WL 4626229, at *7 (S.D.N.Y. Sept. 16, 2014) (finding the FLSA plaintiff adequately alleged an overtime claim where "she worked a fairly regular schedule of forty hours per week, and she occasionally worked more than forty hours per week").  Plaintiff's allegations demonstrate her overtime claim without the need for any inference because Plaintiff's hours each week are estimated exactly.  Plaintiff worked a total of 220.5 overtime hours.  <u>See</u> SAC ¶¶ 21-27; Cavalotti Aff. ¶¶ 6-11.  Applying the overtime rate of $16.50 per hour, Plaintiff should have been paid $3,638.25 for those hours, but was only paid $1,815.10.  <u>See</u> SAC ¶¶ 21-27; Cavalotti Aff. ¶¶ 6-11; <u>see also</u> Part I.B <u>supra</u>.  Thus, Plaintiff is entitled to $1,823.15 in damages ($3,638.25 - $1,815.10) for unpaid overtime compensation.

### 3.    Wage Notice Violation

Plaintiff states that she never received a written wage notice as required by New York's Wage Theft Prevention Act ("WTPA").  <u>See</u> SAC ¶¶ 2, 77-80.  The WTPA is an amendment to the NYLL, <u>see</u> 2010 N.Y. Laws ch. 564 (effective April 9, 2011), which required employer to, <u>inter alia</u>, provide written wage notices "at the time of hiring, and on or before February first of each subsequent year of the employee's employment with the employer."  N.Y. Lab. Law § 195(1)(a) (eff. Apr. 9, 2011 to Feb. 27, 2015).  By an amendment to the WTPA, that provision changed, effective February 27, 2015, to one that required employers to provide written wage notices only "at the time of hiring."  2014 N.Y. Laws ch. 537 § 1, <u>amending</u> N.Y. Lab. Law §

195 (1)(a).  Throughout, the WTPA has required the wage notice to be "in English and in the language identified by each employee as the primary language of such employee," id., and to contain the following information:

> (1) the rate or rates of pay and basis thereof; (2) allowances, if any, claimed as part of the minimum wage; (3) the regular pay day designated by the employer; (4) the employer's name; (5) any 'doing business as' names used by the employer; (6) the physical address of the employer's main office or principal place of business, and a mailing address if different; (7) the employer's telephone number; and (8) such other information as the commissioner deems material and necessary.

Cabrera v. 1560 Chirp Corp., No. 15 Civ. 8194 (TPG) (DF), 2017 WL 1289349, at *7 (Mar. 6, 2017), R & R adopted, 2017 WL 1314123 (S.D.N.Y. Apr. 6, 2017).

Prior to February 27, 2015, "the WTPA entitled employees to recover statutory damages for wage notice violations of $50 per work week, not to exceed $2,500."  Baltierra v. Advantage Pest Control Co., No. 14 Civ. 5917 (AJP), 2015 WL 5474093, at *11 (S.D.N.Y. Sept. 18, 2015); see also 2010 N.Y. Laws ch. 564 § 7, amending N.Y. Lab. Law § 198(1-b).  With the February 27, 2015 amendment, employees became entitled to recover wage-notice statutory damages of $50 dollars "for each work day that the violations occurred or continue to occur," not to exceed $5,000.  See 2014 N.Y. Laws ch. 537 § 2, amending N.Y. Lab. Law § 198(1-b) (emphasis added); see also Zhang v. Red Mountain Noodle House Inc., No. 15 Civ. 628 (SJ) (RER), 2016 WL 4124304, at *6 n.12 (July 5, 2016), R & R adopted, 2016 WL 4099090 (E.D.N.Y. Aug. 2, 2016).[16]

---

[16] Prior to the WTPA, "employees did not have private causes of action for an employer's failure to provide a proper wage statement or notice under NYLL §§ 195(1) and (3)."  Perez-White, 2016 WL 4681221, at *9 (internal quotation marks & alterations omitted).  The WTPA "for the first time created a private right of action for employees for violations of these provisions."  Id. (internal quotation marks omitted).  "Now, a private right of action to recover penalties for violations of Sections 195(1) and 195(3) is provided by Sections 198(1-b) and 198(1-d) of the Labor Law, respectively."  Id. (internal quotation marks & alterations omitted).

Plaintiff here alleges that she never received the notice required by NYLL § 195(1)(a) during her 52-day employment (June 7, 2015 to July 28, 2015) with Defendants.  See SAC ¶¶ 30-31.  Plaintiff is entitled to be awarded $2,550 (52 days x $50) for Defendants' violation of the WTPA wage-notice requirement.[17]

### 4.    Liquidated Damages

Under the FLSA and NYLL, liquidated damages are awardable in an amount equal to the unpaid compensation "unless the employer can show that it acted in good faith."  See Valdez v. H & S Rest. Operations, Inc., No. 14 Civ. 4701 (SLT) (MDG), 2016 WL 3079028, at *2 (Mar. 29, 2016) (quoting 29 U.S.C. § 216(b)), R & R adopted, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); see N.Y. Lab. Law §§ 198, 663(1), (2).  Under the FLSA, a district court is "generally required" to award a plaintiff liquidated damages equal in amount to the unpaid minimum and/or overtime wages.  Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting 29 U.S.C. § 216(b)); 29 U.S.C. § 216(b) ("Any employer who violates [the unpaid wage or overtime provisions of the FLSA] shall be liable . . . in the amount of . . . their unpaid minimum wages, or their unpaid overtime compensation . . . and in an additional equal amount as liquidated damages.").  The FLSA affords the court "sound discretion" to award such damages where the employer fails to demonstrate that he acted in "good faith" and with "reasonable grounds for believing that his act or omission" did not violate the FLSA.  See 29 U.S.C. § 260 ("[I]f the employer shows [the violation] . . . was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] . . . the court may, in its sound discretion, award no liquidated damages.").  The Second Circuit has "characterized the employer's burden as 'a difficult one,' emphasizing that "double damages

---

[17] Plaintiff does not allege a violation of the notice provision found in NYLL § 195(3).

[are] the norm and single damages the exception." <u>Barfield</u>, 537 F.3d at 150 (citing <u>Herman</u>, 172 F.3d at 142).

The NYLL mirrors the FLSA and similarly permits employees to recover "an additional amount as liquidated damages equal to 100 percent of the total amount of the wages found to be due . . . unless the employer proves a good faith basis for believing that its underpayment of wages was in compliance with the law." N.Y. Lab. Law § 198(1-a); <u>see</u> N.Y. Lab. Law § 663(1).

Here, Defendants have not answered or responded at all to this action, much less demonstrated a "good faith" basis for believing the "underpayment" of overtime wage rates was lawful, as both the FLSA and the NYLL require in order to prevent the imposition of liquidated damages. By contrast, Plaintiff has alleged that Defendants' FLSA and NYLL violations were willful. <u>See</u> SAC ¶¶ 59, 68, 75.

Plaintiff seeks liquidated damages under both the FLSA and NYLL. <u>See</u> SAC ¶¶ 1, 63, 76, urging that "the majority position [among courts in this Circuit] is that plaintiffs may recover under both the FLSA and NYLL." Pl.'s Mem. 18. The Second Circuit recently ruled that "district courts may not award cumulative liquidated damages for the same course of conduct under both statutes." <u>Rana v. Islam</u>, 887 F.3d 118, 119 (2d Cir. 2018).

As damages for unpaid straight-time wages under the FLSA are recoverable only up to the minimum wage, but under the NYLL are recoverable up to the agreed-upon rate, Plaintiff is permitted to recover liquidated damages for unpaid straight-time wages under the NYLL. <u>See</u> <u>Calle</u>, 2017 WL 694265, at *15 ("[C]ourts should allow a single award of liquidated damages, under the statute that provides the plaintiffs with the greatest recovery."); <u>Castillo v. RV Transp., Inc.</u>, No. 15 Civ. 527 (LGS), 2016 WL 1417848, at *3 (S.D.N.Y. April 11, 2016) (plaintiff may

only recover under one statute, but she may "recover under the statute that provides the great[er] relief").

Applying 100 percent liquidated damages, Plaintiff is entitled to $1,071.00 in liquidated damages for unpaid straight-time wages under the NYLL.  See Gonzalez v. Gan Israel Pre-School, No. 12 Civ. 6304 (MKB) (VMS), 2014 WL 1011070, at *1, *14 (E.D.N.Y. Mar. 14, 2014) (adopting recommendation that liquidated damages be awarded for violations of NYLL § 191); see also N.Y. Lab. Law § 198.  Plaintiff is also entitled to liquidated damages on unpaid overtime compensation totaling $1,823.15.  See Calle, 2017 WL 694265, at *15.  In sum, Plaintiff is entitled to $2,894.15 in liquidated damages.

### 5.  Pre-Judgment Interest Under The NYLL

Although it is "well settled" that pre-judgment interest is not awardable under the FLSA, Begum v. Ariba Disc., Inc., No. 12 Civ. 6620 (DLC), 2015 WL 223780, at *6-7 (S.D.N.Y. Jan. 16, 2015), "the NYLL permits the award of both liquidated damages and pre-judgment interest." Fermin v. Las Delicias Peruanas Rest. Inc., 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015).  Under the N.Y.C.P.L.R., "[i]nterest shall be at the rate of nine per centum per annum."  N.Y.C.P.L.R. § 5004.  Courts ordinarily apply a statutory interest rate of nine percent per annum computed on a simple interest basis interest from "the earliest ascertainable date the cause of action existed." N.Y.C.P.L.R §§ 5001(b), 5004; see Koylum, Inc. v. Peksen Realty Corp., 357 F. Supp. 2d 593, 596 (E.D.N.Y. 2005) (discussing N.Y.C.P.L.R. §§ 5001, 5004).  Where, as here, damages were "incurred at various times," courts typically use the "midpoint of the accrual of damages" method to calculate interest.  See, e.g., Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 342 (S.D.N.Y. 2005).  In exercising its discretion, the Court uses the midpoint between the start and end dates of Plaintiff's employment.  See, e.g., Wicaksono v. XYV 48 Corp., No. 10 Civ.

3635 (LAK) (JCF), 2011 WL 2022644, at *9 (S.D.N.Y. May 2, 2011) (finding that calculating prejudgment interest from the midway point of each plaintiff's employment is a reasonable approach).

Plaintiff's employment with Defendants began on June 7, 2015, see SAC ¶ 19, and ended on July 28, 2015, see id. ¶¶ 28, 47.  Applying the reasonable intermediate date approach, the midpoint date for the purposes pre-judgment interest calculations is July 2, 2015 (the midpoint between June 7, 2015 and July 28, 2015).  Plaintiff is owed $2,894.15 in unpaid straight-time and overtime wages.  Therefore, the Court respectfully recommends granting Plaintiff prejudgment interest on her wage claims, calculated at a daily rate of $0.71 (($2,894.15 x 9%) ÷ 365 days) from July 2, 2015 through the entry of judgment.

### 6.   Summary Of Damages Calculations Under FLSA and NYLL

In sum, the Court respectfully recommends that Defendants be ordered to pay Plaintiff $1,071.00 for unpaid earned straight-time wages; $1,823.15 for unpaid overtime compensation; $2,550 for WTPA notice damages; and $2,894.15 in liquidated damages, for a total pre-interest damages award of $8,338.30.  The Court also recommends awarding Plaintiff $0.71 per day in pre-judgment interest from July 2, 2015 through the entry of judgment on the $2,894.15 in unpaid straight-time and overtime wages.

### E.   Sexual Harassment Under Title VII Against Defendant DaddyO's

Plaintiff brings a claim for discrimination under Title VII against DaddyO's.  See SAC ¶¶ 81-83.  Title VII "prohibits sexual harassment, rooted in gender discrimination."  Dillon v. Ned Mgmt., Inc., 85 F. Supp. 3d 639, 652 (E.D.N.Y. 2015) (citing Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994)).  In pertinent part, Title VII reads: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to

[her] compensation, terms, conditions, or privileges of employment, because of such individual's

. . . sex."  42 U.S.C. §  2000e(2)(a)(1).  "Individuals are not subject to liability under Title VII."

Sassaman v. Gamache, 566 F.3d 307, 315-16 (2d Cir. 2009).

A plaintiff seeking relief against an employer for sexual harassment in the workplace can

proceed under two theories: (1) quid pro quo harassment; and (2) a hostile work environment.

See Garcia v. Coll. of Staten Island, City Univ. of N.Y., No. 11 Civ. 2252 (PKC) (LB), 2015 WL

12732468, at *5 (E.D.N.Y. Feb. 6, 2015) (citing Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57,

64-65 (1986)).  Although Plaintiff does not specify under which theory she is proceeding, her

claim is based on allegations of persistent harassment from her co-worker and is best construed

as one for a hostile work environment; she cannot be alleging quid pro quo harassment because

she has not alleged any sexual harassment by a supervisor.  See Figueroa v. RSquared NY, Inc.,

89 F. Supp. 3d 484, 490 (E.D.N.Y. 2015) ("[T]he law of quid pro quo sexual harassment requires

that the alleged harasser is the supervisor who affects the conditions of employment." (internal

quotation marks omitted) (collecting cases)).

To prevail on a hostile work environment claim, a plaintiff who is harassed by a co-

worker must show both (1) a hostile work environment; and (2) that a specific basis exists for

imputing the conduct that created the hostile environment to the employer.  Id. (citing Van Zant

v. KLM Royal Dutch Airlines, 80 F.3d 708, 715 (2d Cir. 1996).  An employer who has notice of

a hostile work environment has a duty to take reasonable steps to eliminate it.  Id. (citing Murray

v. N.Y. Univ. Coll. of Dentistry, 57 F. 3d 243, 249 (2d Cir. 1995).

### 1.    Hostile Work Environment

To establish the existence of a hostile work environment under Title VII, a plaintiff must

show that the harassment was so "severe and pervasive" as to "alter the conditions of [the

plaintiff's] employment and create an abusive working environment." Meritor, 477 U.S. at 67; accord Redd v. N.Y. Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2002); Alfano v. Costello, 294 F.3d 365, 373 (2d Cir. 2002). "The kinds of workplace conduct that may be actionable under Title VII . . . include 'unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" Redd, 678 F.3d at 175 (quoting Meritor, 477 U.S. at 65). The conduct must create an "objectively hostile or abusive work environment," and the "victim must also subjectively perceive that environment to be abusive." Alfano, 294 F.3d at 374. "There is no 'mathematically precise test' . . . for deciding whether an incident or series of incidents is sufficiently severe or pervasive to alter the conditions of a plaintiff's working environment." Raspardo v. Carlone, 770 F.3d 97, 114 (2d Cir. 2014) (quoting Harris v. Forklift Sys., Inc., 510 U.S. 17, 22-23 (1993)). "Instead, courts must assess the totality of the circumstances, considering elements such as 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Id. (quoting Harris, 510 U.S. at 22-23).

Here, Plaintiff alleges that soon after her employment with DaddyO's began, her co-worker, Mr. Gonzalez, attempted to follow her home, and she notes that Mr. Gonzalez also followed another female co-worker home. SAC ¶¶ 35-36. Beginning one week after she began her employment, Mr. Gonzalez made repeated sexual remarks and gestures toward Plaintiff on a regular basis. Id. ¶¶ 32-45. These remarks and gestures, described above in Part I.C, were graphic and lewd. See SAC ¶¶ 38-39, 43-45. In addition to the sexual remarks and gestures, the alleged harassment included physical contact; specifically, Plaintiff alleges that on one occasion, Mr. Gonzalez approached her from behind and began massaging her shoulders. Id. ¶ 34. Based

43

on these allegations, the Court finds that Plaintiff has sufficiently alleged that her working conditions were such that a reasonable person would have found the abuse so severe and pervasive as to alter her working conditions.

### 2.    Imputed Liability To Defendant DaddyO's

Under Title VII, when harassment is perpetrated by the plaintiff's co-worker, "the employer is only liable for negligence, namely that the employer knew or should have known about the harassment and failed to take corrective action, in permitting the harassing conduct to endure."  Olsen v. Suffolk Cty., No. 15 Civ. 4064 (JS) (AYS), 2016 WL 5395846, at *11 (E.D.N.Y. Sept. 27, 2016) (internal quotation marks omitted); see MacCluskey v. Univ. of Conn. Health Ctr., 707 F. App'x 44, 46 (2d Cir. 2017) ("Where, as here, a hostile work environment claim involves conduct by a co-worker, rather than by a supervisor, the employer is only liable for its own failure to exercise reasonable care to address the harassment."); Rojas v. Roman Catholic Diocese of Rochester, 660 F.3d 98, 107 (2d Cir. 2011) ("When harassment is perpetrated by the plaintiff's coworkers, an employer will be liable if the plaintiff demonstrates that the employer either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." (internal quotation marks omitted)).

To establish that an employer failed to take appropriate corrective action, a plaintiff must demonstrate that: "(1) someone had actual or constructive knowledge of the harassment, (2) the knowledge of this individual can be imputed to the employer, and (3) the employer's response, in light of that knowledge, was unreasonable."  Duch v. Jakubek, 588 F.3d 757, 763 (2d Cir. 2009). The employer is charged with actual or constructive knowledge of harassment where: (1) the official's status in the management hierarchy qualifies him as a "proxy" for the company, (2) the official has "a duty to act on the knowledge and stop the harassment," or (3) the official has a

"duty to inform the company of the harassment." Torres v. Pisano, 116 F.3d 625, 636-37 (2d Cir. 1997).

Plaintiff alleges that she complained of Mr. Gonzalez's behavior on three separate occasions: (1) in June 2015, Plaintiff complained to Mr. Fosdal regarding Mr. Gonzalez's attempt to follow her home and reported to Mr. Fosdal that Mr. Gonzalez had also followed her female co-worker home, SAC ¶ 36; (2) at the end of June or beginning of July 2015, Plaintiff complained to Mr. Fosdal regarding the sexual harassment to which she was subjected by Mr. Gonzalez, id. ¶ 41; and (3) on or about July 27, 2015, Plaintiff sent an email to Defendants complaining of sexual harassment, id. ¶ 46. In response to the first complaint, Mr. Fosdal stated that he was "going to take care of it." Id. ¶¶ 36-37. In response to the second complaint, Mr. Fosdal "expressed disbelief in Plaintiff's allegation of sexual harassment" and "dismiss[ed] Plaintiff's complaint." Id. ¶ 41. In response to the third complaint, Mr. Fosdal terminated Plaintiff's employment the following day. Id. ¶ 47.

As Plaintiff's second complaint to Mr. Fosdal, in late June or early July 2015, was specifically about the sexual harassment to which Plaintiff was being subjected, Mr. Fosdal had the requisite knowledge to address the alleged harassment from at least that point forward.[18] As Mr. Fosdal was CEO and owner of DaddyO's, and was Plaintiff's supervisor, SAC ¶¶ 15-17, his knowledge of the sexual harassment can be imputed to DaddyO's. See Feingold v. New York,

---

[18] Plaintiff's first complaint to Mr. Fosdal concerned the incident in which Mr. Gonzalez attempted to follow Plaintiff home, and another incident in which Mr. Gonzalez followed another co-worker home. SAC ¶ 36. For purposes of showing a hostile work environment, "incidents that are facially sex-neutral may sometimes be used to establish a course of sex-based discrimination–for example, where the same individual is accused of multiple acts of harassment, some overtly sexual and some not." Alfano, 294 F.3d at 375. In contrast as the first complaint concerned only these incidents, and Plaintiff does not allege that she informed Mr. Fosdal of Mr. Gonzalez's sexual harassment of Plaintiff in that complaint, the Court cannot conclude on this record that Mr. Fosdal had notice of sexual harassment prior to the second complaint.

366 F.3d 138, 152 (2d Cir. 2004) (finding that where the plaintiff provided evidence that his supervisor was "aware that he was experiencing a hostile work environment, yet . . . took [no] action either to disapprove of or to remedy the situation," plaintiff had "alleged sufficient facts to permit a trier-of-fact to find a specific basis for imputing the discriminatory conduct to the [employer]."); Torres, 116 F.3d at 636-37 ("[W]here the person who gained notice of the harassment was the supervisor of the harasser (e.g., had the authority to hire, fire, discipline, or transfer him), knowledge will be imputed to the employer on the ground that the employer vested the supervisor the authority and the duty to terminate the harassment.").

In sum, Plaintiff has sufficiently alleged that Mr. Fosdal had knowledge of Plaintiff's sexual harassment by Mr. Gonzalez and failed to take reasonable measures to stop it from the time of the second complaint, and that Mr. Fosdal's knowledge and failure to act may be imputed to DaddyO's.  Accordingly, the Court respectfully recommends that Plaintiff's motion be granted as to liability with respect to her Title VII sex discrimination claim against Defendant DaddyO's.

### F.  Sexual Harassment Under The NYCHRL

#### 1.  Hostile Work Environment

"'To establish a gender discrimination claim under the NYCHRL, the plaintiff need only demonstrate by a preponderance of the evidence that she has been treated less well than other employees because of her gender'–i.e., that she has been subjected to differential treatment." Dillon, 85 F. Supp. 3d at 657 (quoting Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 110 (2d Cir. 2013)).  "The NYCHRL . . . applies a more lenient standard than Title VII to discrimination and hostile work environment claims."  McLeod v. Jewish Guild for the Blind, 864 F.3d 154, 157 (2d Cir. 2017).  "The federal 'severe or pervasive' standard is not used under [the] NYCHRL."  Dillon, 85 F. Supp. 3d at 657 (quoting Mihalik, 715 F.3d at 114).  Instead, a

plaintiff must show that she "was treated 'less well' because of [membership in a protected class].'" Mihalik, 715 F.3d at 111 (quoting Williams v. N.Y.C. Hous. Auth., 872 N.Y.S.2d 27, 36 (1st Dep't 2009)).

Here, as Plaintiff has sufficiently established the existence of a hostile work environment under Title VII's "severe or pervasive" standard," she necessarily has established a hostile work environment under the NYCHRL's more lenient standard.  See, e.g., Watkins v. N.Y.C. Transit Auth., No. 16 Civ. 4161 (LGS), 2018 WL 895624, at *6 (S.D.N.Y. Feb. 13, 2018) ("Because [p]laintiff has presented evidence from which a reasonable factfinder could conclude that [defendant's] conduct was severe and pervasive, she necessarily has presented sufficient evidence to meet the NYCHRL's more liberal standard for establishing an actionable work environment."); Manswell v. Heavenly Miracle Acad. Servs., Inc., No. 14 Civ. 7114 (MKB) (SMG), 2017 WL 9487194, at *9 (Aug. 23, 2017) ("[P]laintiff established that she was subjected to a hostile work environment under [the] Title VII . . . standard; because th[at] standard[] [is] higher than the one[] governing claims brought under the NYCHRL, it follows necessarily that plaintiff's allegations establish sex discrimination under the NYCHRL."), R & R adopted, 2017 WL 4075180 (E.D.N.Y. Sept. 14, 2017).

## 2. Defendant DaddyO's Liability Under The NYCHRL

Under the NYCHRL, an employer may be liable for discriminatory behavior by an employee only where:

> (1) the employee or agent exercised managerial or supervisory responsibility; or
>
> (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where the conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

> (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

N.Y.C. Admin. Code § 8-107(13)(b).  Here, from the time of Plaintiff's second complaint, Mr. Fosdal had knowledge of Mr. Gonzalez's alleged sexual harassment of Plaintiff and failed to take corrective action.  Because Mr. Fosdal "exercised managerial or supervisory responsibility," his knowledge and inaction may be imputed to DaddyO's.  The standard for liability under Section 8-107(13)(b)(2) of the NYCHRL is met, and the Court respectfully recommends that Plaintiff's motion be granted as to liability with respect to her NYCHRL sex discrimination claim against Defendant DaddyO's.

### 3.    Defendant Fosdal's Liability Under The NYCHRL

Plaintiff brings a claim against Mr. Fosdal individually for aider and abettor liability under Section 8-107(6) of the NYCHRL, which makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so."  N.Y.C. Admin. Code § 8-107(6).   "[B]efore an individual may be considered an aider and abettor, liability must first be established as to the employer," Dillon, 85 F. Supp. 3d at 658 (internal quotation marks omitted), as it has been here.

"An individual who 'actually participates' in the discrimination is liable as an aider and abettor" under the NYCHRL.  Fatcheric v. Bartech Grp., No. 15 Civ. 9702 (WHP), 2017 WL 3084418, at *6 (S.D.N.Y. July 19, 2017) (quoting Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995)).  "[C]ourts have found that a failure to investigate can constitute 'active participation' to support an 'aiding and abetting' claim."  Delisi v. Nat'l Ass'n of Prof'l Women, Inc., 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014) (citing Feingold, 366 F.3d at 157-58); see Dillon, 85 F. Supp. 3d at 658-59 ("Aider-and-abettor liability under NYCHRL may extend to supervisors who

failed to investigate or take appropriate remedial measures despite being informed about the existence of alleged discriminatory conduct." (internal alterations & quotation marks omitted)); Lewis v. Triborough Bridge & Tunnel Auth., 77 F. Supp. 2d 376, 383-84 (S.D.N.Y. 1999) ("[T]he law is clear that a supervisor need not make derogatory comments or unwelcome sexual advances to subject himself or herself to liability" as an aider and abettor; "[r]ather, the case law establishes beyond cavil that a supervisor's failure to take adequate remedial measures can rise to the level of 'active participation' under the New York State Human Rights Law.").[19]

"[M]ere ineptitude and insensitivity in response to a complaint of harassment standing alone is insufficient to support a finding of personal liability." Patrick v. Adjusters Int'l, Inc., No. 16 Civ. 2789 (WFK) (PK), 2017 WL 6521251, at *6 (E.D.N.Y. Dec. 18, 2017) (internal quotation marks omitted) (where individual defendants "are alleged to have made efforts to remediate [the alleged harasser's] conduct that proved to be ineffective[,] [t]his does not rise to the level of 'active participation' in discrimination for which courts have previously imposed liability due to a failure to investigate" (collecting cases)).

As described above, Plaintiff alleges that she first complained to Mr. Fosdal in June 2015 regarding the incident in which Mr. Gonzalez attempted to follow Plaintiff home, and at that time reported to Mr. Fosdal that Mr. Gonzalez had also followed Plaintiff's female co-worker home.  SAC ¶ 36.  Plaintiff alleges that Mr. Fosdal said that he was "going to take care of it."  Id. Plaintiff complained to Mr. Fosdal again in late June or early July 2015, informing Mr. Fosdal of

---

[19]  Although in Lewis, the court was analyzing a claim for aiding and abetting under the New York State Human Rights Law ("NYSHRL"), "[a]iding and abetting claims under the NYSHRL and the NYCHRL are analyzed under the same standard, 'as language of the two laws is virtually identical.'"  Erasmus v. Deutsche Bank Ams. Holding Corp., No. 15 Civ. 1398 (PAE), 2015 WL 7736554, at *7 (S.D.N.Y. Nov. 30, 2015) (quoting Schanfield v. Sojitz Corp. of Am., 663 F. Supp. 2d 305, 344 (S.D.N.Y. 2009)).

the sexual harassment to which she was subjected by Mr. Gonzalez.  Id. ¶ 41.  According to

Plaintiff, not only did Mr. Fosdal "refuse[] to remedy the situation," he "dismiss[ed] Plaintiff's

complaint" and "express[ed] disbelief in Plaintiff's allegations of sexual harassment."  Id.  On or

about July 27, 2018, Plaintiff sent an email to Defendants complaining of sexual harassment.  Id.

¶ 46.  Mr. Fosdal terminated Plaintiff the following day.  Id. ¶ 47.  According to Plaintiff, after

initially providing a different explanation, Mr. Fosdal revealed that the real reason for Plaintiff's

termination was her complaint of sexual harassment, and when Plaintiff expressed shock that she

was being terminated rather than Mr. Gonzalez, Mr. Fosdal stated, "[s]orry but I need him."  Id.

¶¶ 48-49.  Plaintiff alleges that she "pleaded with [Mr. Fosdal] to conduct an investigation, or

transfer Mr. Gonzalez to [Mr. Fosdal's] other restaurant, but [he] repeated that he needed Mr.

Gonzalez at DaddyO's."  Id. ¶ 50.

Plaintiff's allegations, which are deemed to be admitted in light of Defendants' default,

provide a sufficient basis to find Defendant Fosdal individually liable as an aider and abettor

under the NYCHRL.  See, e.g., Cid v. ASA Inst. of Bus. & Comp. Tech., Inc., No. 12 Civ. 2947

(DLI) (VMS), 2013 WL 1193056, at *6 (E.D.N.Y. Mar. 22, 2013) (allegation that supervisor

"failed to investigate or take remedial action in response to [p]laintiff's complaints provides a

sufficient basis for an aiding and abetting claim under [the] NYCHRL").

## G.      Retaliation Under Title VII Against Defendant DaddyO's

To sustain a claim for unlawful retaliation under Title VII, a plaintiff must establish that:

"(1) she participated in a protected activity known to the defendant; (2) the defendant took an

employment action disadvantaging her; and (3) there exists a causal connection between the

protected activity and the adverse action." [20]  Patane v. Clark, 508 F.3d 106, 115 (2d Cir. 2007).

Regarding the first element, Plaintiff's complaints regarding the conduct of Mr. Gonzalez

constituted protected activity.  See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)

(holding that protected activity under Title VII includes "informal protests of discriminatory

employment practices, including making complaints to management"); Martin v. State Univ. of

N.Y., 704 F. Supp. 2d 202, 227 (E.D.N.Y. 2010) ("It is clearly established that informal

complaints to supervisors constitute protected activity under Title VII." (internal quotation marks

omitted)); Kantor-Hopkins v. Cyberzone Health Club, No. 06 Civ. 0643 (DLI) (LB), 2007 WL

2687665, at *4 (E.D.N.Y. Sept. 10, 2007) ("Complaining about sexual harassment is a protected

activity.").  As to the second element, Plaintiff's termination was an employment action that

disadvantaged her.  See, e.g., Feingold, 366 F. 3d at 153 ("Examples of materially adverse

employment actions include termination of employment . . . ." (internal quotation marks

omitted)).

     As to the final element, "the causal connection needed for proof of a retaliation claim can

be established indirectly by showing that the protected activity was closely followed in time by

the adverse action."  Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001) (internal quotation

marks omitted); see Treglia v. Town of Manlius, 313 F.3d 713, 720 (2d Cir. 2002) ("We have

held that a close temporal relationship between a plaintiff's participation in protected activity and

an employer's adverse actions can be sufficient to establish causation.").  Plaintiff alleges that

she was fired the day after her emailed complaint concerning the sexual harassment she was

---

[20] As with Title VII discrimination claims, individuals are not subject to liability under Title VII
for retaliation claims.  See e.g., Bernstein v. Seeman, 593 F. Supp. 2d 630, 633-34 (S.D.N.Y.
2009) ("[T]he case law in this jurisdiction is clear that there can be no individual liability under
Title VII.  This rule applies to claims of retaliation as well." (internal citations omitted)).

experiencing.  See SAC ¶¶ 46-47.  The temporal proximity of these events is sufficient to

establish a causal link between them.  See, e.g., Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834,

845 (2d Cir. 2013) ("The three-week period from [plaintiff's] complaint to her termination is

sufficiently short to make a prima facie showing of causation indirectly through temporal

proximity" for Title VII retaliation claim.).

As Plaintiff has established a prima facie case of retaliation, and in light of the defaulting

Defendants' failure to articulate a legitimate, non-retaliatory reason for terminating Plaintiff, the

Court respectfully recommends that Plaintiff's motion be granted as to liability with respect to

her Title VII retaliation claim against Defendant DaddyO's.

### H.   Retaliation Under The NYCHRL

Under the NYCHRL, retaliation claims "are viewed under a broader interpretation than

Title VII . . . and must be analyzed independently." Russo v. N.Y. Presbyterian Hosp., 972 F.

Supp. 2d 429, 455 (E.D.N.Y. 2013).  To prevail on a retaliation claim brought under the

NYCHRL against an employer, a plaintiff must show "(1) that she took an action opposing her

employer's discrimination and (2) that, as a result, the employer engaged in conduct that was

reasonably likely to deter a person from engaging in such action." Mihalik, 715 F.3d at 112.  An

individual may be held liable under the NYCHRL if they "actually participated in the conduct

giving rise to the plaintiff's claim." Dillon, 85 F. Supp. 3d at 662.

The phrase "'opposing any practice' can include situations where a person, before the

retaliatory conduct occurred, merely 'made clear her disapproval of the defendant's

discrimination by communicating to him, in substance, that she thought his treatment of the

victim was wrong.'" Mihalik, 715 F.3d at 112 (alterations omitted) (quoting Albunio v. City of

N.Y., 922 N.Y.S.2d 244, 947 (N.Y. 2011)).  "The causation element is also less demanding

under the NYCHRL." Manswell, 2017 WL 9487194, at *12 (explaining that "[a] plaintiff need

not demonstrate but-for causation; rather, a plaintiff must merely show a 'causal link' between

the protected activity and the retaliatory act" (quoting Bermudez v. City of N.Y., 783 F. Supp. 2d

560, 577 (S.D.N.Y. 2011))). When a plaintiff has established a defendant's liability under Title

VII for retaliation, "it necessarily follows that the plaintiff has established [the defendant's]

liability under the more liberally construed NYCHRL." Id.

Because, for the reasons stated in Part II.G above, Plaintiff has established Defendant

DaddyO's liability under Title VII for retaliation, Defendant DaddyO's liability for retaliation

under the NYCHRL is also established. As the termination of Plaintiff's employment was

carried out by Defendant Fosdal, he is individually liable under the NYCHRL for "actually

participat[ing]" in the conduct giving rise to Plaintiff's retaliation claim. Dillon, 85 F. Supp. 3d

at 662. I therefore respectfully recommend that Plaintiff's motion be granted as to liability with

respect to her NYCHRL retaliation claims against both Defendants.

### I.        Compensatory Damages Under Title VII And NYCHRL

"Victims of employment discrimination are entitled to reasonable damages that would

make the plaintiff 'whole for injuries suffered on account of unlawful employment

discrimination.'" Moore v. Houlihan's Rest., Inc., No. 07 Civ. 03129 (ENV) (RER), 2011 WL

2470023, at *4 (May 10, 2011) (quoting Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 54 (2d

Cir. 1998)), R & R adopted, 2011 WL 2462194 (E.D.N.Y. June 17, 2011). Violations of Title

VII and the NYCHRL "entitle a plaintiff to compensatory damages for pecuniary loss as well as pain and suffering."[21]  Id.

In this action, Plaintiff seeks damages in the form of back pay and emotional distress damages, as well as interest.  The Court will consider each in turn.

### 1.      Back Pay

 Plaintiff seeks a back pay award of $16,062.16 for the period of July 28, 2015 (the date Plaintiff's employment with Defendants was terminated) to "mid-February 2016" (the date Plaintiff was terminated from subsequently obtained employment, as further discussed below).  See Cavalotti Aff. ¶¶ 36-37.

Back pay is available under both Title VII and the NYCHRL.  See 42 U.S.C. § 2000e-5(g)(1); N.Y.C. Admin Code § 2000e-5(g)(a).  Although not automatic, an award of back pay is generally awarded absent special circumstances.  See Carrero v. N.Y.C. Hous. Auth., 890 F.2d 569, 580 (2d Cir. 1989) ("[a]n award of backpay is the rule, not the exception" under Title VII).  "An employee is generally entitled to back pay from the date of his or her wrongful termination to the date the discrimination is rectified."  Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 149 (E.D.N.Y. 2013) (citing Noel v. N.Y.S. Office of Mental Health Cent. Psychiatric Ctr., 697 F.3d 209, 213 (2d Cir. 2012)).  The award typically consists of "lost salary, including anticipated raises, and fringe benefits."  Saulpaugh v. Monroe Cmty. Hosp., 4 F.3d 134, 145 (2d Cir. 1993).  "Any back pay award must be reduced by plaintiff's interim earnings or amounts 'earnable with

---

[21] Title VII also permits recovery of punitive damages.  42 U.S.C. § 1981a(a)(1).  Plaintiff included only a general request for punitive damages in her Second Amended Complaint, failing to specify an amount sought or any method of calculation.  See SAC ad damnum clause.  Neither the memorandum of law of declaration of counsel submitted in support of the instant motion refers to punitive damages.  Accordingly, the Court recommends that Plaintiff's punitive damages claim be deemed abandoned.  See Houlihan's, 2011 WL 2470023, at *4 n.5.

reasonable diligence.'" Bonura v. Chase Manhattan Bank, N.A., 629 F. Supp. 353, 355 (S.D.N.Y. 1986) (quoting 42 U.S.C. § 2000e-5(g)), aff'd, 795 F.2d 276 (2d Cir. 1986).

To determine Plaintiff's back pay award, the Court first determines the wages Plaintiff would have earned from the date her employment with Defendants was terminated until mid-February 2015.  At the agreed-upon rate of $11.00/hour, Plaintiff was entitled to $440.00 per week in straight-time hours ($11/hour x 40 hours) during her employment with Defendants. With respect to overtime, Plaintiff worked a total of 220.5 overtime hours during her seven full weeks of employment with Defendants.  Dividing the 220.5 total number of overtime hours by seven weeks yields an average of 31.5 overtime hours per week.  At the time-and-a-half rate of $16.50/hour, Plaintiff earned an average weekly amount of $519.75 in overtime pay ($16.50/hour x 31.5 hours).  Adding together the $440 per week in straight-time hours and the $519.75 per week in overtime hours, the Court calculates Plaintiff's average weekly pay during her employment with DaddyO's to be $959.75 per week.  See, e.g., Hill v. Airborne Freight Corp., No. 97 Civ. 7098 (FB), 2003 WL 366641, at *1 (E.D.N.Y. Feb. 20, 2003) (calculating average weekly overtime as part of back pay calculation in Title VII case).  For the approximately twenty-nine week period between July 28, 2015 to February 15, 2016,[22] Plaintiff would have been entitled to approximately $27,832.75 in wages from Defendants ($959.75/week x 29 weeks) had she not been terminated.

In her affidavit, Plaintiff states that following her termination by Defendants, she was unemployed until the second week of September 2015, at which time she began working for Multibrands Eltingville SB LLC, d/b/a Smash Burger ("Smash Burger").  Cavalotti Aff. ¶¶ 34-

---

[22] As Plaintiff does not specify an exact date, the Court construes "Mid-February 2016" to mean February 15, 2016.

35.  At Smash Burger, Plaintiff earned a total of $11,039.22 in wages before being terminated by Smash Burger in mid-February 2016.  Id.  These earnings operate to reduce the amount of back pay otherwise allowable.  See Bonura, 629 F. Supp. at 355.

As the $16,062.16 in back pay sought by Plaintiff approximates the Court's calculations, I respectfully recommend that Plaintiff be awarded $16,062.16 in back pay.[23]

### 2. Emotional Distress Damages

A prevailing plaintiff in a Title VII action is entitled to compensation for her "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(b)(3).   The NYCHRL also entitles a plaintiff to compensatory damages for pain and suffering.  See Moore, 2011 WL 2470023, at *3.  The Second Circuit sorts emotional distress claims into three categories of claims: "garden-variety," "significant" or "egregious."  Rainone v. Potter, 388 F. Supp. 2d 120, 122 (E.D.N.Y. 2005).  "The middle of the spectrum consists of 'significant' ($50,000 up to $100,000) and 'substantial' emotional distress claims ($100,000) . . . [which] are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony or evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses." Id. at 122-23.  'Egregious' emotional distress claims justifying awards exceeding $100,000 "have only been warranted where the discriminatory conduct was outrageous and shocking or where the physical health of plaintiff was significantly affected."  Id. at 123 (citation omitted).

"'Garden variety' emotional distress claims lacking extraordinary circumstances and without medical corroboration generally merit $5,000 to $35,000 awards."  Munson v. Diamond,

---

[23] Subtracting the $11,039.22 in Smash Burger wages from the $27,832.75 in wages the Court calculated Plaintiff would have earned from her employment with Defendants yields $16,793.53, an amount slightly higher than Plaintiff's request.

No. 15 Civ. 425 (DAB) (BCM), 2017 WL4863096, at *8 (June 1, 2017) (internal quotation

marks omitted), R & R adopted, 2017 WL 4862789 (S.D.N.Y. Oct. 26, 2017); see also Joseph,

970 F. Supp. 2d at 153 ("For typical or garden-variety emotional distress claims, district courts

have awarded damages ranging from $5,000 to $35,000, based upon the plaintiff's vague or

conclusory testimony of distress.").  "Important factors in assessing an appropriate amount to

award for emotional suffering include the amount, duration, and consequences of the claimant's

emotional distress."  Munson, 2017 WL4863096, at *8 (internal quotation marks omitted).

 In this case, Plaintiff submitted an affidavit in which she attests to feeling "extremely

offended and humiliated" by the sexual harassment to which she was subjected during her

employment with DaddyO's, see Cavalotti Aff. ¶ 22, and to "suffer[ing] emotional distress" as a

result of Defendants' retaliatory and discriminatory conduct, id. ¶ 33.  Given the persistent and

aggressive nature of the harassment by Mr. Gonzalez that Plaintiff describes and her firing, the

Court finds Plaintiff's emotional distress to be established by the record.  As Plaintiff did not

attest to, or submit evidence of, seeking medical or mental health treatment; did not provide

details of her experience of distress; and as her employment was relatively brief, the distress and

humiliation Plaintiff suffered places her claim for such damages at the lower end of the damages

spectrum.  See, e.g., Welch v. United Parcel Serv., 871 F. Supp. 2d 164, 194 (E.D.N.Y. 2012)

("[T]o fall into the category of cases that are beyond the garden variety case, [plaintiff's] stress

would necessarily need to manifest itself in the form of severe emotional or physical reactions.").

 Some recent cases addressing short periods of employment in which a plaintiff did not

offer evidence to corroborate claims of distress and humiliation, have awarded damages between

$5,000 and $20,000.  See, e.g., Miller-Rivera v. Eddie Jr.'s Sports Lounge, Inc., No. 17 Civ. 603

(LDH) (SMG), 2018 WL 3581735, at *4 (Jan. 2, 2018), R & R adopted, 2018 WL 3581698

(E.D.N.Y. July 25, 2018) (recommending and later adopted award of $5,000 where "plaintiff

was terminated only about a week after she was hired[,] . . . did not seek treatment for her

emotional distress, and offered no evidence to corroborate her claims of anxiety, humiliation or

hurt feelings"); Munson, 2017 WL 4863096, at *8 (recommending and later adopting award of

$15,000 for emotional distress damages where plaintiff submitted an affidavit in which she

attested to, inter alia, feeling "intimidated, abused, anxious, and physically ill" as a result of the

defendant's conduct, but "fail[ed] to provide any medical records, any corroborating evidence, or

any evidence of 'extraordinary circumstances,' as that term is used in Title VII cases"

(alterations omitted)); Cartagena v. Providence Const. Corp., No. 14 Civ. 7357 (RRM) (LB),

2017 WL 9286986, at *4 (May 1, 2017), R & R adopted, 2018 WL 2088004 (E.D.N.Y. May 3,

2018) (recommending and later adopting award of $5,000 in emotional damages where the

plaintiff testified that he felt significant emotional distress and anger, but did not seek

psychological or medical treatment); Drice v. My Merchant Servs., LLC, No. 2015 Civ. 0395

(MKB) (MDG), 2016 WL 1266866, at *4 (Mar. 4, 2016), R & R adopted, 2016 WL 1266948

(E.D.N.Y. Mar. 31, 2016) (recommending and later adopting award of $20,000 in emotional

distress damages where plaintiff credibly testified that she suffered from, inter alia, severe

anxiety and depression, feelings of worthlessness, and an emotional distress that affected her

ability to eat and sleep, but the duration of her employment was brief and she did not submit any

evidence of seeking professional help or having prolonged, severe symptoms); Gonsalez v.

Marin, No. 12 Civ. 1157 (ENV) (RML), 2014 WL 2514704, at *11 (Apr. 25, 2014), R & R

adopted, 2014 WL 2526918 (E.D.N.Y. June 4, 2014) (recommending and later adopting award

of $10,000 for emotional distress damages where the plaintiff's allegations of emotional distress

were serious, but were stated as conclusions drawn by the plaintiff herself, unsupported by

corroborating medical testimony, and "failed to address the severity, duration, or consequences of her emotional distress"); Manson v. Friedberg, No. 08 Civ. 3890 (RO), 2013 WL 2896971, at *6 (S.D.N.Y. June 13, 2013) (awarding $10,000 in emotional distress damages based on the plaintiff's vague and conclusory testimony that she "had low self-esteem, felt 'unworthy' and 'was having a difficult time feeling trust'").

Based on Plaintiff's evidence, which is limited to Plaintiff's own statements in her affidavit and which does not include medical corroboration; and based on the damages awarded in the cases listed above, this Court respectfully recommends that an award of $10,000 would be sufficient to address Plaintiff's claim of emotional distress.[24]

### 3.     Interest On Back Pay Award

Although interest on compensation for lost wages is generally awarded under Title VII, interest on awards for emotional distress is not awarded "when it is unnecessary to make the plaintiff whole." Rodriguez v. Express World Wide, LLC, No. 12 Civ. 4572 (RJD) (RML), 2014 WL 1347369, at *7 n.5 (Jan. 16, 2014) (internal quotation marks omitted), R & R adopted, 2014 WL 1350350 (E.D.N.Y. Mar. 31, 2014).  An award of prejudgment interest on Plaintiff's back pay award is appropriate here "because it serves to compensate the plaintiff for loss of the use of money wrongfully withheld." Id. at *7 (internal quotation marks omitted).  Likewise, an award

---

[24] Title VII sets a cap on the aggregate amount of compensatory and punitive damages (excluding back pay) awarded to a plaintiff.  Pursuant to 42 U.S.C. § 1981a(b)(3), the amount of that cap depends on the employer's size.  According to the Second Amended Complaint, "[u]pon information and belief, at all times relevant herein, [DaddyO's] employed fifteen or more employees for each business day through twenty or more calendar weeks."  SAC ¶ 11.  The Title VII damages cap applicable to employers with 15 to 100 employees is $50,000.  42 U.S.C. § 1981a(b)(3).  The recommended award of $10,000 in compensatory damages (excluding back pay) is within the Title VII cap.  The NYCHRL does not impose a cap on compensatory damages.  See Caravanes v. 53rd St. Partners, LLC, No. 09 Civ. 7821 (RPP), 2012 WL 3631276, at *21 (S.D.N.Y. Aug. 23, 2012) ("[T]here is no cap on the amount of damages that can be recovered under . . . the NYCHRL.").

of prejudgment interest on Plaintiff's back pay award is appropriate under the NYCHRL.  See

Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 258-59 (E.D.N.Y. 2014) (explaining that although the

NYCHRL does not expressly provide for prejudgment interest on an award of back pay, the New

York Court of Appeals has interpreted the analogous NYSHRL as providing for prejudgment

interest and that this interpretation "has been applied to awards under the NYCHRL").

     "Where a judgment is based on violations of both federal and state law, courts in this

circuit uniformly have applied a federal interest rate, most commonly based on the average rate

of return on one-year Treasury bills for the relevant time period."  Rodriguez, 2014 WL

1347369, at *7 (internal quotation marks omitted).  Plaintiff is entitled to interest on her back pay

at the federal interest rate, which is based on the average rate of return on one-year Treasury

bills, from November 6, 2015, until the date final judgment is entered.[25]  See 28 U.S.C. §

1961(a);  Manswell, 2017 WL 9487194, at *16.  Such an award is typically calculated as

follows:

> First, the award [is] divided pro rata over the appropriate time period.  Second, once
> the award is divided, the average annual United States treasury bill rate of interest
> referred to in 28 U.S.C. § 1961 will be applied.  Third and finally, in order to
> guarantee complete compensation to the plaintiff, the interest will be compounded
> annually.

Thomas v. iStar Fin., Inc., 508 F. Supp. 2d 252, 264 (S.D.N.Y. 2007).  Accordingly, the Court

respectfully recommends that Plaintiff be awarded prejudgment interest on the $16,062.16 back

---

[25] Plaintiff's employment with DaddyO's was terminated on July 28, 2015, and, as explained
above, her back pay award covers the period from that date until the termination of her
subsequent employment at Smash Burger in mid-February 2016.  Where, as here, damages have
accrued over time, New York law permits interest to be calculated "from a single reasonable
intermediate date."  See N.Y.C.P.L.R. § 5001(b); see also Sass, 6 F. Supp. 3d at 259-60
(approving "single reasonable intermediate date" method for calculating interest on back pay
award in employment discrimination context).  In this case, I respectfully recommend using
November 6, 2015, which is the mid-point between July 28, 2015 and February 15, 2016, as the
reasonable intermediate date from which interest should be calculated.

pay award at the federal interest rate, from November 6, 2015 until the date final judgment is entered, calculated using the method described above.

As the Court respectfully recommends an amount for emotional distress damages designed to make Plaintiff whole, the Court respectfully recommends denying Plaintiff's request for interest on the emotional distress damages award.  See Rodriguez, 2014 WL 1347369, at *7.

**J.    Attorneys' Fees and Costs**

**1.    Attorneys' Fees**

Plaintiff seeks to recover attorneys' fees and costs.  Both the FLSA and NYLL contain fee-shifting provisions allowing for the recovery of reasonable attorneys' fees and costs to a prevailing plaintiff.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a), § 663(1).  "A party prevailing under Title VII and the NYCHRL–including on a motion for default judgment–is entitled to reimbursement of attorneys' fees at the discretion of the court."  Miller-Rivera, 2018 WL 3581735, at *4 (citing 42 U.S.C. § 2000e-5(k); N.Y.C. Admin. Code § 8-502(g)).  Here, Plaintiff seeks $17,037.50 in attorneys' fees and $1,043.34 in costs.

In order to determine an appropriate fee award, courts typically start with a determination of the "lodestar" amount, which is the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Healey v. Leavitt, 458 F.3d 63, 71 (2d Cir. 2007) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  Counsel for the prevailing party must submit evidence in support of its proposed figures and "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."  Hensley, 461 U.S. at 433-34.  Contemporaneous billing records are required.  See N.Y.S. Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983); see also Scott v. City of N.Y., 626 F. 3d 130, 132 (2d Cir. 2010).  Determining the reasonableness of the fee to be awarded is within

61

the sound discretion of the district court.  See Arbor Hill Concerned Citizens Neighborhood

Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)

(noting the "considerable discretion" trial courts exercise in awarding attorneys' fees).

### i.      Reasonable Hourly Rate

Plaintiff seeks a rate of $500 per hour for counsel Joshua P. Frank, and $350 per hour for

counsel Dorina Cela, both of whom are attorneys with the law firm Phillips & Associates,

Attorneys At Law, PLLC ("Phillips & Associates").  See Frank Decl. ¶ 35, ECF No. 43-3.

A reasonable hourly rate is the rate "a reasonable, paying client would be willing to pay .

. . bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to

litigate the case effectively."  Arbor Hill, 522 F.3d at 184, 190.  Reasonable hourly rates should

be based on "rates prevailing in the community for similar services of lawyers for reasonably

comparable skill, experience, and reputation."  Cruz v. Local Union No. 3 of IBEW, 34 F.3d

1148, 1159 (2d Cir. 1994) (citing Blum v. Stenson, 465 U.S. 886, 894 (1984)).  Determination of

the prevailing market rates may be based on evidence presented or a judge's own knowledge of

hourly rates charged in the community.  Farbotko v. Clinton Cty. of N.Y., 433 F.3d 204, 209 (2d

Cir. 2005).  The "community" is generally considered the district where the district court sits.

See Lochren v. Cty of Suffolk, 344 F. App'x 706, 708 (2d Cir. 2009).

In this District, approved hourly rates for attorneys normally range from "$200 to $450

for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates,

and $70 to $100 for paralegals."  Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc., No. 15

Civ.  5737 (ADS) (ARL), 2017 WL 5564892, at *2 (Nov. 3, 2017), R & R adopted, 2017 WL

5564593 (E.D.N.Y. Nov. 18, 2017).  Where there is a default judgment, however, lower rates are

warranted due to the lack of opposition.  See Siracuse v. Program for the Dev. of Human

Potential, No. 07 Civ. 2205 (CLP), 2012 WL 1624291, at *28 (E.D.N.Y. Apr. 30, 2012) (lower

rates justified where case "involved defaults in which there was no opposition").

 Plaintiff does not provide information concerning the general legal experience of Mr.

Frank or Ms. Cela, or their experience in the subject matter of this action.  Without such

information, the Court is "in no position to determine whether, and to what degree, the unique

skills or experience of an attorney . . . weigh[] in favor of deviating from the norms governing

reasonable rates."  Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 29 (S.D.N.Y. 2015).

According to the Court's search of the New York State Unified Court System's Attorney

Directory ("NYS Attorney Directory"), Mr. Frank was admitted to the New York State bar in

2014, and according to his biography on the Phillips & Associates website, he graduated from

Boston University law school in 2008.[26]  According to the NYS Attorney Directory, Ms. Cela

was admitted to the New York State bar in 2011.

 In light of Plaintiff's counsel's failure to provide helpful background information about

their professional qualifications, and the fact that this case involves a default in which there was

no opposition, the Court respectfully recommends that the District Judge award Mr. Frank $200

per hour, which is at the low end of the range for senior associates, and Ms. Cela $175 per hour,

which is in higher end of the range for junior associates.  See Calle v. Yoneles Enters., Inc., No.

16 Civ. 1008 (NGG) (RLM), 2017 WL 6942652, at *20 (Oct. 24, 2017), R & R adopted, 2018

WL 401269 (E.D.N.Y. Jan, 12, 2018) (recommending and later adopting rate of $150 per hour

for attorney in case involving default judgment, where the attorney failed to provide information

concerning her seniority or experience in the subject matter, but a search of the NYS Attorney

Directory showed that she was admitted to the state bar in 2014).

---

[26] See https://www.newyorkcitydiscriminationlawyer.com/joshua-p-frank.html

ii.        **Reasonable Number Of Hours Expended**

In determining the proper number of hours for which a defendant should be compensated, "the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). "The relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). The Court must "examine[] the particular hours expended by counsel with a view to the value of the work product of the specific expenditures to the client's case." Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997).

Here, counsel for Plaintiff submitted contemporaneous time records and seek payment for a total of 45.55 hours, including 7.3 hours expended by Mr. Frank and 38.25 hours expended by Ms. Cela. See Attorney Timesheet, ECF No. 43-14. Overall, the Court finds the hours to be reasonable, with the exception of the 7.1 hours expended on the second motion for default judgment. As noted above, after the filing of the first motion for default judgment, the Court identified several issues of concern requiring clarification. See 7/12/2017 ECF Order. Thereafter, the first motion for default judgment was withdrawn, and Plaintiff filed the second motion for default judgment that is now before the Court. Although Plaintiff addressed some of the Court's concerns by adding minimal additional allegations (such as the allegation that, upon information and belief, DaddyO's employs over fifteen people, see SAC ¶ 11), the current motion papers are almost identical to the first motion papers. Thus, the 7.1 hours billed by Plaintiff's counsel in preparing the second motion is excessive; the Court accordingly respectfully recommends reducing the number of hours awarded for that activity by 4 hours.

Specifically, the Court respectfully recommends reducing the 5.6 hours expended by Ms. Cela for work on the second default judgment motion to 3 hours, and reducing the 1.5 hours expended by Mr. Frank for reviewing the second default judgment motion to 1 hour.

In sum, the Court respectfully recommends awarding Plaintiff attorneys' fees in the amount of $7,598.75.  This figure includes $6,238.75 for Ms. Cela ($175/hour x 35.65 hours) and $1,360 for Mr. Frank ($200/hour x 6.8 hours).

The Court does not have information regarding the fee arrangement between Plaintiff and her counsel.  To the extent that Plaintiff's counsel seeks fees from Plaintiff in excess of the amount of the award recommended in this report and recommendation, within fourteen days of the adoption of this report and recommendation, if adopted, Plaintiff's counsel shall submit a letter to the Court setting forth their proposed fee arrangement.  The Court will review any such proposed arrangement in accordance with Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).

## 2.      Costs

A party awarded attorneys' fees is also "entitled to compensation for those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients."  LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998).  Plaintiff seeks $1,043.35 in costs, see Frank Decl. ¶ 37, consisting of $400 for the court filing fee; $472.00 for process server fees; $120 in New York Secretary of State filing fees; and $51.35 in postage and delivery costs.  See ECF No. 43-15.  The Court finds that the costs sought are of the type normally incurred and charged to clients.  See, e.g., N.Y.C. Dist. Council of Carpenters v. Trs. of N.Y.C. Dist. Council of Carpenters Welfare Fund, No. 16 Civ. 3429 (ARR) (ST), 2018 WL 3768586, at *9 (July 23, 2018) (finding that filing fees, service of process fees and the "processing fee with the New York

Secretary of State" are reasonable costs that the plaintiff may recover), R & R adopted, 2018 WL 3785331 (E.D.N.Y. Aug. 8, 2018); Manswell, 2017 WL 9487194, at *23 ("Costs for filing, process servers, and photocopying . . . are generally recoverable.").  Plaintiff's request includes $260.13 in costs associated with filing and serving the Second Amended Complaint, which was only necessary due to the deficiencies identified in the Amended Complaint and should not be borne by Defendants.[27]  After applying this reduction, I respectfully recommend that Plaintiff be awarded $783.22 in costs.

## III.    CONCLUSION

For the reasons explained above, the Court respectfully recommends that default judgment be granted in Plaintiff's favor against Defendants, jointly and severally, in the amount of $8,338.30 for damages under the FLSA and NYLL, which includes $1,071.00 for unpaid agreed-upon wages; $1,823.15 for unpaid overtime compensation; $2,550 for no-notice damages; and $2,894.15 in liquidated damages.  The Court also recommends awarding Plaintiff $0.71 per day in pre-judgment interest on her FLSA and NYLL unpaid wages claims from July 2, 2015 through the entry of judgment.

The Court also respectfully recommends that default judgment be granted in Plaintiff's favor against Defendants, jointly and severally, in the amount of $26,062.16 for damages under Title VII and the NYCHRL, which includes $16,062.16 for back pay and $10,000 for emotional distress damages.  The Court also recommends awarding Plaintiff pre-judgment interest on her back pay award at the federal interest rate, from November 6, 2015 until the entry of judgment, calculated using the method described above in Part I.I.3.

---

[27] The $260.13 in costs associated with the Second Amended Complaint consist of a $40 New York Secretary of State filing fee, $19.13 in postage and delivery costs and $201 for process server fees.  See ECF No. 43-15.

The Court respectfully recommends that Plaintiff be awarded $7,598.75 in attorneys' fees and $783.22 in costs.  Any request by Plaintiff's counsel for fees greater than this amount from Plaintiff must be submitted to the Court within two weeks of the adoption of this report and recommendation, if adopted, for a Cheeks review.

## IV.   OBJECTIONS

This report and recommendation will be filed electronically, and Chambers will mail copies to Defendants Mr. Fosdal and DaddyO's at 2461 Hylan Boulevard, Staten Island, New York 10306.  Chambers will also mail copies of this report and recommendation to 181 Bay Street, Staten Island, New York 10301, and to 286 Richmond Valley Road, Staten Island, New York 10309, which appear to be the addresses of two other restaurants (respectively, "DaddyO's," and "DaddyO's BBQ & Sports Bar") owned by Mr. Fosdal.[28]

Written objections to this report and recommendation must be timely filed in accordance with the Individual Rules of the District Judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file objections within the specified time waives the right to appeal.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

Dated:  Brooklyn, New York
        September 8, 2018

*Vera M. Scanlon*
_____
VERA M. SCANLON
United States Magistrate Judge

---

[28] See https://www.daddyosbbqbar.com/

67